# Underwood v. The State.

## *Murder.*

(Decided December 19, 1912. Rehearing denied February 6, 1913. 60 South. 842.)

1. *Jury; Sumomning; Empaneling.*—Where the defendant was indicted for murder, and on his arraignment, a day was fixed for his trial, and the judge made an order fixing 75 as the number of persons to constitute the venire for this trial, 34 of whom had been drawn and summoned as regular jurors for the week in which the case was set for trial, and in open court drew from the jury box the names of 49 persons to serve as special jurors, who together with the regular jurors should make the seventy-five persons ordered summoned, and it appeared that more than 34 had been drawn to serve as regular jurors for the week, but only 34 had been summoned, and the sheriff forthwith served upon defendant a list of all the names drawn and summoned for the week, and of the special jurors drawn for the trial, no such showing was made as would require the court to grant a motion to quash the venire.

2. *Same; Challenge; Cause.*—The court may on its own motion and against the objection of defendant excuse a juror who stated on his voir dire examination that he had a fixed opinion as to the guilt or innocence of defendant which would bias his verdict, which evidence would not remove.

3. *Same.*—The state may challenge for cause any juror who has a fixed opinion as to capital punishment when trying a person indicted for a capital felony.

4. *Same.*—In all prosecutions for felony, the state may challenge for cause any juror who is of the opinion that a conviction should not be had on circumstantial evidence.

5. *Same; Disqualification; Witness in Cause.*—At the common law a juror was not disqualified because he was a witness in the case; while either party may challenge for cause, a juror who is a witness the trial court cannot on its own motion exclude him, as the parties may waive such challenge.

6. *Same; Opinion.*—The common law disqualifications of jurors go to their fitness to serve as such, and one having a fixed opinion as to a matter in issue is disqualified; and the court has an inherent power to excuse him regardless of the wishes of the parties.

7. *Evidence; Admission.*—Where the preliminary evidence showed that the statements made by defendant shortly after the homicide were freely and voluntarily made, such statements were properly received in evidence against him.

8. *Homicide; Threats; Admissibility.*—Where a defendant admitted a homicide and relied on self-defense, evidence that he had threatened the life of decedent, probably a year before the homicide was admissible as illustrating the intent with which the killing was done.

9. *Same; Self-defense; Evidence.*—Such evidence was also admissible on the issue as to who provoked or who was the aggressor in the difficulty resulting in the killing.

10. *Same.*—Where the state showed that defendant knew before the killing that his father on that day had had a difficulty with decedent, and had been arrested at the instigation of deceased, the defendant relying on self-defense, it was competent to introduce proof of the fact of the difficulty and of the arrest, without the particulars thereof, as bearing on the issues or motives, and as to who provoked the difficulty when the killing occurred.

11. *Same; Right to Invoke.*—One must be free from all fault in provoking or bringing on the fatal encounter in order to invoke the right of self-defense.

12. *Same; Instructions.*—Where there was evidence that defendant began shooting before decedent could draw his weapon, and that before decedent drew his weapon, defendant could have retreated without increasing his peril, a charge that if there was no reasonable ground of escape after decedent began shooting, without increasing defendant's peril, defendant must be acquitted, was properly refused.

13. *Same.*—Where there was evidence justifying the inference that defendant brought on the difficulty which resulted in decedent's death, it was proper to refuse a charge that there was no evidence that defendant was at fault in bringing on the difficulty.

14. *Same.*—The honest belief of the slayer, that his life is in danger at the hands of decedent, at the time of the homicide, must be that of a reasonable man; and the belief must be a reasonable and honest one.

15. *Same.*—A charge that defendant was under no duty to retreat unless he could have done so without endangering his life or limb, was properly refused.

16. *Same; Killing by Deadly Weapon; Burden of Proof.*—Where the proof showed an intentional killing by defendant by the use of a deadly weapon, the defendant had the burden of proving a pressing necessity to take life, and that he could not safely retreat without apparently increasing his danger.

17. *Same; Degrees.*—Where a defendant was convicted of murder in the second degree, the giving or refusing of instructions as to mur-

[Underwood v. The State.]

der in the first degree is rendered harmless, and will not be considered on appeal.

18. *Charge of Court; Meaningless.*—In a homicide case a charge which refers to the deceased as defendant, and defendant as plaintiff, is meaningless and properly refused.

19. *Same; Covered by Those Given.*—It is not error to refuse instructions which are but duplicates of written instructions given.

20. *Same; Assuming Facts.*—A charge which assumes as a fact matter as to which the evidence is in conflict, is properly refused.

21. *Same; Reasonable Doubt.*—A charge asserting that the jury cannot find defendant guilty unless they believe him guilty beyond all reasonable supposition is properly refused.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Ransom Underwood was convicted of murder in the second degree, and he appeals. Affirmed.

. The facts sufficiently appear from the opinion of the court. The following charges were refusel to the defendant:

(7) "The court charges the jury that, if, from all the evidence, you have a reasonable doubt as to whether it was necessary for the defendant to shoot the deceased to save his own life or prevent great bodily harm being done him, you will acquit defendant."

(63) "I charge you that defendant was under no duty to retreat, unless he could have done so without endangering his life or limb."·

(10) "Unless you are convinced beyond all reasonable doubt and to a moral certainty, after considering all the evidence in this case, that the defendant was killed, and that he had a reasonable mode of escape. you cannot find the plaintiff guilty."

(11) "The burden of proof is on the state in this case to convince you, beyond all reasonable doubt, that defendant brought about the difficulty, and that there was a reasonable mode of escape by defendant; and, unless they have so convinced you, after considering all the

evidence in this case, it is your duty to acquit the defendant."

(16) "I charge you that at the time the defendant fired the shot that killed deceased, if he reasonably believed that it was necessary for him to fire said shot to save himself from great bodily harm, and that the circumstances were such as to convince an ordinary man that he was in danger of great bodily harm at the hands of deceased, then you should acquit him, provided you find he is not at fault in bringing on the difficulty."

(30) "The defendant is entitled to the plea of self-defense in this case, unless the evidence convinces you, beyond a reasonable doubt, that defendant was at fault in bringing on the difficulty."

(40) "The burden of proof is not on the defendant to establish self-defense by a preponderance of the evidence; but if there is a reasonable doubt in the minds of the jury as to whether or not the defendant was in imminent peril of his life or of great bodily harm at the time he shot, or that the circumstances were such as to raise in the minds of defendant a reasonable belief that he was in imminent peril of his life or of great bodily harm, and you are not convinced beyond a reasonable doubt that defendant was at fault in bringing on the difficulty, then you must acquit him."

(47) "If the defendant has proven to your reasonable satisfaction that, at the time he fired the fatal shot which killed deceased, there was a present, impending necessity to take the life of the deceased by the defendant, then the burden shifts to the state to prove, beyond a reasonable doubt, that defendant was not free from fault in bringing on the difficulty."

(18) "There is no evidence that defendant was at fault in bringing on the difficulty."

[Underwood v. The State.]

(21 "If the defendant honestly believed that he was in danger of great bodily harm at the hands of deceased at the time he fired the shot that killed the deceased, the defendant was justified in acting upon such belief."

(27) "If the defendant shot the deceased under a bona fide belief that his life was in danger, he was under no duty to retreat, unless he could have done so without increasing his danger."

(24) "If there is one single fact proven to the satisfaction of the jury which is inconsistent with the defendant's guilt, the jury should acquit him."

(28) "Lack of motive on the part of defendant, when taken in connection with all the evidence in the case, may generate a reasonable doubt, and entitle the defendant to an acquittal."

(29) 'You cannot find the defendant guilty, unless you believe him guilty beyond all reasonable supposition."

L. D. GRAY, and GUNN & POWELL, for appellant. The court erred in excusing ex mero motu the juror Long because of his fixed opinion.—Sec. 7276, Code 1907; *Lyman v. State*, 45 Ala. 79; *Murphey v. State*, 37 Ala. 147. Any of the challenges for cause mentioned in the statute may be waived.—*Bell v. State*, 115 Ala. 25; *Walker v. State*, 153 Ala. 31. In this case the ground of challenge was expressly waived.—Authorities, supra. The court was in error in not permitting Brown to testify that when defendant came to him and gave up, he said that he was sorry he had to shoot, but that he was forced to do so because deceased was shooting at him. It had been brought out by the state, and defendant is entitled to the rest of it.—*Burns' Case*, 49 Ala. 370; *Levy's Case*, 49 Ala. 390; *Webb's Case*, 100 Ala. 47. Charge 24 was correct and should have been given.—*Walker v. State*,

*supra.* Charge 47 should have been given.—*Gibson's Case,* 89 Ala. 121. Charges 13 and 29 should have been given.—*Joe's Case,* 38 Ala. 42.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The jurors disqualified themselves on their examination, and the court properly permitted them to be challenged for cause.—*Murphy v. State,* 37 Ala. 142; *Waller v. State,* 40 Ala. 325; *Smith v. State,* 55 Ala. 1; *Jackson v. State,* 74 Ala. 26; *Garrett v. State,* 76 Ala. 18; *Whatley v. State,* 144 Ala. 68. Counsel discuss evidence and refused charges, but without further citation of authority.

DE GRAFFENRIED, J.—The defendant was indicted for murder in the first degree, and was convicted of murder in the second degree and sentenced to the penitentiary for 35 years.

The homicide was committed in the town of Cordova, where the deceased, William Tuggle, was shot by the defendant while the parties were in a gristmill. Both of the parties had carried corn to the mill at the above point, to be ground into meal. Both of them were, for several hours before the difficulty, about upon the streets of Cordova, and the deceased on that day had a difficulty in the town of Cordova with the father of the defendant. In fact, the deceased, before the difficulty in which he was killed by the defendant, saw the town marshal of Cordova and had the father of the defendant arrested.

There was some evidence tending to show that the deceased was not upon friendly terms with the defendant, or with the father of the defendant; and there was also some evidence tending to show that the deceased and the defendant had each, prior to the day of the difficulty, made threats against the other.

It appears from the evidence that the deceased, a short while before the difficulty with the defendant, went to the mill and took a seat upon some sacks of corn, and was there, in that position, in conversation with the miller, when the defendant stepped into the doorway of the mill, at which time the fatal difficulty at once took place. The state claimed that shortly before the defendant went to the mill he took his pistol from his hip pocket, or from one of the inside pockets of his coat, and placed it in his right-hand trousers pocket, and that, so soon as the defendant stepped into the doorway of the mill and saw the deceased, he at once pulled his pistol and emptied it at the deceased, killing him almost instantly.

The defendant, on the other hand, claimed that he went to the mill to get his meal; that he did not know that the deceased was in the mill; that when he stepped into the door of the mill the deceased at once drew his pistol and began to shoot at him; and that he (the defendant) shot the deceased in self-defense.

The shooting was at very close range. The deceased was struck at least four time, and the defendant, although the deceased shot at him more than once, was not harmed. The theory of the state was that the deceased, after the defendant had opened fire upon him, drew his pistol and shot at the defendant in an effort to save his own life.

(1) When the case was called for trial, the defendant moved the court to quash the venire facias upon several grounds. The record discloses that when the defendant was arraigned upon, and pleaded to, the indictment, a day was regularly fixed for the trial of his case, and that the presiding judge made an order fixing 75 as the number of persons who should constitute the venire from which the jury to try the defendant should be se-

lected. The record further shows that 34 persons had been *drawn* and *summoned* as regular jurors for the week in which the defendant's case had been set for trial, and that the presiding judge, in open court, drew from the jury box the "names of 49 persons to serve as special jurors in this case, which, together with the regular jurors drawn and summoned for the week in which this cause is set, makes the 75 persons ordered summoned, and the sheriff is ordered to summon said persons to appear in court October 29, 1912. It is further ordered that the sheriff forthwith serve upon the defendant a copy of the list of the names of all the jurors drawn and summoned for the week in which the trial is set, and the special jurors drawn for the trial of this cause, together with a copy of the indictment."

While more than 34 names of persons had been drawn to serve as regular jurors for the week in which the defendant's case was set for trial, it is not claimed that either more or less than 34 of such persons were actually *summoned*. Neither is it claimed that the sheriff did not "forthwith" serve a true copy of the indictment, together with a correct list containing the names of the 75 persons composing the venire, upon the defendant in person, as required by the above-quoted order of the court. It is therefore apparent that the defendant's motion to quash the venire was properly overruled.— Special Acts 1909, p. 319, § 32; *Jackson v. State,* 171 Ala. 38, 55 South. 118; *Savage v. State,* 174 Ala. 94, 57 South. 469.

While the jury was being impaneled, one J. O. Long, whose name appeared upon the venire, stated, on his voir dire, that he had a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict, and that evidence would not remove that opinion. The state and the defendant both expressed a willing-

ness to waive the challenge for cause. The court, however, against the objection of the defendant, ex mero motu, excused the said Long, and refused to allow him to sit as a juror on the trial of said cause. It is the duty of a court to see that trials are impartially had and the trial judge acted within the law when he excused Long from the jury.—*Curtis v. State,* 118 Ala. 125, 24 South. 111.

In a case where the defendant is indicted for a capital felony, the state may challenge for cause any juror who has a fixed opinion against capital punishment. In all prosecutions for felonies the state may also challenge for cause any juror who is of the opinion that a conviction should not be had on circumstantial evidence. The trial judge therefore properly allowed the state to challenge for cause the two jurors, J. A. Pate and Luther Morris.

(4) During the progress of the trial, the defendant reserved numerous exceptions to the rulings of the trial court in admitting or rejecting certain evidence. We find nothing, however, in any of said rulings of which the defendant has any legal cause of complaint.

Immediately after the homicide the defendant was arrested and placed in the calaboose or town jail of Cordova. A good many people seem to have accompanied the defendant to the jail at the time of his arrest. Immediately after he was placed in the jail, he appears to have made certain statements relative to the homicide. All of the evidence shows that these statements were freely and voluntarily made; and, as they were admitted after a sufficient predicate for their admission had been laid, we know of no rule of law which was violated by the court when they were admitted in evidence. The court, also, against the objection of the defendant, permitted the state to offer evidence tending

to show that the defendant, some time before the homicide—probably a year before—had threatened the life of the deceased. As the defendant admittedly killed the deceased, the fact that defendant had made threats to take the life of the deceased was admissible for the purpose of illustrating the quo animo with which the homicide was committed, and also, under the facts of the case, as tending to show that the defendant provoked, or was the aggressor in, the difficulty. The court also, against the objection of the defendant, permitted the state to show the *fact,* but not the *particulars,* of a difficulty between the father of the defendant and the deceased on the day of the homicide. The court also, against the objection of the defendant, permitted the state to show the *fact* that the deceased, on the day of the homicide, had procured the arrest of the defendant's father at the hands of the town marshal of Cordova. The court did not permit the particulars of this arrest to go before the jury; and, undoubtedly, the *fact* of the difficulty between the defendant's father and the deceased, and the fact of the father's arrest, as above stated, were admissible in evidence. The defendant is shown to have *known* of the fact of his father's difficulty and arrest before the homicide; and these facts were potent on the question of a motive on the part of the defendant for the homicide, and also, under the conflicting evidence in this case, on the question as to who brought on or provoked the difficulty.

The above discussion touches the important features of the evidence, to the admission of which the defendant objected. There were other minor objections and exceptions to the action of the trial court in its rulings on the evidence; but, after a careful examination of each of such rulings, we are prepared to say that in its rulings on the evidence the trial court was free from reversible error.

(5) The trial court, at the request of the defendant, gave numerous written charges to the jury, which, in our opinion, placed the law of the case as applied to the facts, in as favorable a light to the defendant as the court could legally have done. The trial court, however, refused several written charges which the defendant requested it to give to the jury, and these charges we will now consider.

(a) Charges 7 and 33 were bad, in that they ignored the doctrine of freedom from fault, on the part of the defendant, in provoking the difficulty. To successfully invoke the doctrine of self-defense, a defendant must have been free from all fault in provoking the fatal difficulty.

(b) Charge 10, as it appears in the record, is meaningless, and was properly refused.

(c) When the intentional killing of the deceased by the defendant with a deadly weapon has been shown by the state, the burden is then placed by the law upon the defendant to prove that there existed a pressing necessity on his part to take life; and, as a necessary sequence, that he could not safely have retreated without apparently increasing his peril.—*Gibson v. State,* 89 Ala. 121, 8 South. 98, 18 Am. St. Rep. 96. Charges 11, 16, 30, 40, and 47 were, for the above reasons, if for no others, properly refused.

(d) There was evidence in this case from which the jury had the right to infer that the defendant fired the first, and, probably, the second, shot in the difficulty which resulted in the death of the deceased. The jury had the right to infer that the defendant, when he stepped into the door of the mill, saw the deceased sitting on a sack of corn; and that before the deceased could draw his weapon the defendant began shooting at the deceased. The jury might also have inferred that *before*

the deceased drew his weapon and began shooting at the defendant the defendant might have stepped back out of the mill and retreated without increasing his peril. The court properly refused charge 12 for this, if for no other, reason.

(e) We will not consider charge 15. It relates to murder in the first degree, and the defendant was convicted of murder in the second degree. Even if, as applied to murder in the first degree, the charge was proper, its refusal was harmless error.

(f) It has been frequently held that a trial court will not be reversed because of its refusal to give a charge asserting that there is no evidence of a particular matter. In this case there was evidence of circumstances, however, from which the jury had the right to infer that the defendant brought on the difficulty which resulted in the death of the deceased. Charge 18 was properly refused.

(g) The law will not justify the taking of human life, the other elements of self-defense concurring, upon the mere honest belief of the slayer that, at the time he commits the homicide, his life is in danger at the hands of the deceased. The honest belief must be that of a reasonable man; and such belief must be an honest and reasonable belief. Charges 21 and 27 were properly refused for that, if for no other, reason.

(h) Charge 24 was practically a duplicate of charge 25, which was given in writing to the jury, and was therefore properly refused.

(i) Charge 28 assumes as a fact *not* in dispute a *fact* about which the evidence *was* in *serious* conflict, and was therefore, on that ground alone, properly refused. There was evidence tending to show that the defendant had a motive for killing the deceased, but charge 28 assumes that the defendant had no motive for the homicide.

[Underwood v. The State.]

(j) Charges 29 and 33 are patently bad. Charge 36 was duplicated by charge 5, which was given to the jury at the defendant's request, and was therefore properly refused.

We have above considered all the questions presented by this record which appear to possess any merit. The trial court, so far as we are able to trace the course of the trial from the record, in all its rulings on the evidence and in the charges which it gave to the jury, was not only impartial, but kept in all things within the requirements of the law. The defendant's case was one for the jury, and it appears from this record that all of the defendant's relevant evidence was permitted to go, without objection, freely before the jury. The written charges which were given to the jury, and which appear in this record, correctly and fully state the law, both for the state and for the defendant, which governed the questions which, under the evidence, the jury was called upon to determine. We therefore lay this record aside with the satisfactory feeling that, in this case, the defendant has been given a full, fair, and impartial trial; and that error prejudicial in any way to the defendant has not only not been shown by the record, but that none in fact existed.

Let the judgment of the court below be affirmed.

Affirmed.

Dowdell, C. J., and Anderson and Mayfield, JJ., concur.

ON APPLICATION FOR REHEARING.

De GRAFFENRIED, J.—It has been determined by this court that, while either party to a cause may challenge for cause any juror who is a witness in the cause, it is error for the trial judge, of his own motion, to have

him stand aside, as the parties may waive such challenge for cause.—*Bell v. State,* 115 Ala. 25, 22 South. 526. At *common law* a juror was *not* incompetent because he was a witness in the cause.—*Bell's Case,* 44 Ala. 393. A juror having a fixed opinion in reference to the matter in issue was disqualified from serving as a juror upon the principles of the common law.—*Coghill v. Kennedy,* 119 Ala. 641, 24 South. 459. Common-law disqualifications of jurors go to their *fitness* to serve as jurors; and all trial courts in this state have the inherent power to exclude, in the interest of justice, all jurors who were, at common law, held to be unfit to serve as jurors.—Code 1907, § 7279; *Curtis v. State,* 118 Ala. 125, 24 South. 111.

A juror, who is a witness in the cause, may have been summoned as a witness to prove some mere formal matter not going to the merits of the cause; and he may stand absolutely unbiased between the parties. For this reason, this court holds that the parties may waive this mere statutory ground of challenge; and that, if they do so, it is reversible error for the trial judge to excuse such juror ex mero motu.

On the other hand, a juror who has a *fixed opinion* as to the merits of the controversy between the parties is unfit to serve as a juror in their case; and, in the interest of justice, the trial judge has the inherent power to excuse such juror, regardless of the wishes of the parties.

Application for rehearing overruled.