McMILLAN, Judge.
The appellant was found guilty of murder and was sentenced to imprisonment of twenty years and one day, and ordered to pay costs and $25 to the Victims’ Compensation Fund.
The first two witnesses to testify for the State were the sons of the two victims. Rosco Galloway testified that his father, Marvin Rosco Galloway, left Texas with his uncle, Edwin Elco Galloway, to visit Alabama. Mr. Edwin Galloway He was driving a 1981 Buick station wagon. He testified that his father was 69 years old and in good physical condition for a man of his age. Edwin Elco Galloway, Jr. testified that his father was 73 years old, was taking blood pressure medication, and was unable to drive the car because of a sight problem.
Aubrey Riley testified that while traveling toward Alexander City he confronted two vehicles on his side of the highway, which had been involved in an accident. Riley sent his wife to call the police and he remained at the scene of the accident. He approached the vehicles involved in the accident and found two white males dead in a station wagon and another individual trapped under the dashboard of an Oldsmobile. He further testified that he was unable to observe the extent of the trapped individual’s injuries. Riley also testified that the injured person, the appellant, was attempting to struggle free, so Riley instructed him to remain still. He testified that the only odor he detected around the car was that of antifreeze.
Scottie Jones testified that he lived on Highway 259 near the scene of the accident. He testified that on the night in question he heard “a loud boom,” and, after going to the road, discovered that an automobile accident had occurred. He testified that the cars were on the same side of the road and that the station wagon appeared to be in its correct lane, while the Oldsmobile appeared to have veered into the improper lane.
Kenneth Wayne Cowart of the Alexander City Fire Department testified that he and Myles Thomas responded to a call on the night in question concerning the wreck. He further testified that the police arrived on the scene about 30 or 35 seconds before he and Myles Thomas arrived. He testified that he found the two cars wrecked on the left side of the road. He first checked the appellant’s car and found the appellant conscious but trapped under the car. He testified that the appellant was talking and saying “Get me out of here.” Cowart testified that he examined the appellant and found no life-threatening injuries. However, he discovered a cut on the appellant’s chin and the appellant was also complaining of a pain in his right arm. Cowart testified that while he was examining the appellant’s eyes and facial features for head injuries, he noticed that the appellant had a strong odor of an alcoholic beverage on his breath. Cowart then approached the other car and he found two white elderly *88 males dead. The appellant was put in the ambulance and driven to a hospital. Co-wart testified that he and Thomas left the appellant in the care of Cathy Lashley, who met them at the entrance to the hospital.
Myles Thomas, of the Alexander City Fire Department, testified that he accompanied Ken Cowart in responding to a call concerning the accident. His testimony substantiated that of Ken Cowart. He further testified that the appellant’s speech was “a little slurred” and that the appellant’s wife also rode in the ambulance to the hospital. Thomas testified on redirect examination that he smelled the odor of an alcoholic beverage which seemed to be coming from the appellant’s breath.
Joe McClellan, of the Alexander City Police Department, testified that he and Officer Hardmon responded to a call concerning the two-vehicle accident. His testimony was similar to that of the previous witnesses, but he added that he observed skid marks on the road that appeared to have been made by the Oldsmobile. He further testified that he detected the odor of an alcoholic beverage when he was talking with the appellant through his car window. He testified, on redirect examination, that the station wagon was situated sideways in the northbound lane.
John Tapley, of the Alabama Department of Public Safety, testified that he assisted the City police regarding the accident in question. He testified he was given a vial of blood labeled with the appellant’s name and the name of a Mrs. Huett, the technician who had taken the sample from the appellant. He testified that he was not present when the blood sample was taken. He further testified that he went to the hospital to talk with the, appellant, but found the appellant either asleep or unconscious. He testified that he took a statement from the appellant’s wife concerning how much the appellant had had to drink before the accident.
Lynn Wright, of the Department of Public Safety, testified that he instructed a Ms. Lashley to draw a blood sample from the appellant and that he was present when the sample was taken by Mrs. Huett. He testified that he was also present when Ms. Lashley read the appellant the consent form and when the consent form was signed. He took the blood sample to Edward Gilliland at the patrol station with instructions that it be delivered to John Tapley.
Cathy Lashley, a nurse at Russell Hospital, testified that Lynn Wright told her to take a blood sample from the appellant. She testified that she read the consent form to the appellant and asked for his signature. She further testified that when she read the consent form to the appellant, he was conscious and alert. She testified that she explained to the appellant that the police had requested the blood sample and that she needed his signature before she could draw the blood. She also testified that he acknowledged that he understood her request and that he began writing with his right hand; however, he complained that his right hand was hurting and took the pen in his left hand and signed the form. Cathy Lashley also testified that there was a “very strong” odor of alcohol on the appellant. She testified that Donda Huett drew the blood sample in her presence and gave it to Lynn Wright.
Donda Huett, a medical technologist at Russell Hospital, testified that she drew the blood and gave it to Lynn Wright.
Edward Gilliland, a radio operator with the State Trooper station in Alexander City, testified that he received the blood from Lynn Wright and that the blood remained in his possession until it was given to Trooper John Tapley.
Ike Moss, a medical examiner and investigator with the Alabama Department of Forensic Sciences, testified that he received the tube of blood from Trooper John Tap-ley and took it to Montgomery in his briefcase. Trooper Tapley, upon his arrival at Montgomery, carried the briefcase into the morgue, put it on his desk, took the blood out, and put the blood in the refrigerator. He further testified that Benjamin Green, a pathologist’s assistant, transported the blood vial to the Auburn lab. He testified that Mr. Green signed a receipt for the blood before taking it to Auburn, where all *89 of the blood work from the Montgomery region is sent. Laura Shelvin, a toxicologist with the Alabama Department of Forensic Sciences in Auburn, testified that she performed blood analyses and urine analyses, for drugs and alcohol, on the victims and the appellant. The results of Marvin Galloway’s test for drugs and alcohol were negative and the results of Edwin Galloway’s test were negative for alcohol, but revealed some acetaminophen, which is often referred to as Tylenol. His tests also indicated possible traces of over-the-counter cold and sinus medication. The appellant’s blood alcohol test revealed a 0.27 percent alcohol content. Ms. Shelvin testified that Benjamin Green brought the samples to the lab and that she has always known him to be very reliable. She further testified that there were certain common symptoms demonstrated by a person with a 0.27 percent alcohol content, which include a “gross motor impairment” and “slurred speech," a lack of attention, emotional disturbances, and “a greatly increased response time.” She further testified that such a person is likely to be sleepy and “to have an extreme impairment of judgment.” She further stated that she could see “no way in which such a person could safely operate a motor vehicle.”
Dr. Charles Fletcher, a physician and senior resident at the University of Alabama Hospital and Clinic, testified that he examined the appellant on the night in question and that the appellant had a heavy odor of alcohol on his breath. He further testified that the appellant was conscious and alert and was consistently requesting something for pain; however, he testified that he was unable to give the appellant any medication for pain because he had a significant injury and was, in Dr. Fletcher’s opinion, intoxicated, and, Dr. Fletcher felt, the application of pain medication on top of the alcohol could result in a severe drop in the appellant’s blood pressure.
The appellant testified that on the morning of the day of the accident, he had consumed one beer, followed by two beers that afternoon. He further testified that, on that day, while driving to his brother’s house, he approached a car being driven slightly over the center, line. He also testified that he was blinded by the car’s bright headlights. He testified that he had been unconscious after the wreck and could not remember making any statement to a state trooper. He further said he could not remember signing a consent form at Russell Hospital. Frank A. Bradley, Jr., a state trooper with the Alabama Department of Public Safety, testified in rebuttal that he took a statement from the appellant’s wife in which she stated that her husband was off work on the day of the accident and that she had seen him drink beer during the day. She also stated that she did not know how many beers the appellant had consumed.
The appellant contends that the trial court erred in its instructions to the jury at the end of the opening statements. Following the attorney’s opening statements, the trial court made the following statement to the jury:
“THE COURT: Ladies and gentlemen, both attorneys have made some reference to presumptions and so forth about the so called P.E.I. test. In the event that evidence of that nature is forthcoming, I think it’s important for you to understand the exact role that that plays in this trial. The defendant is not charged with D.U.I. This is not a D.U.I. case. It’s a charge of murder, and there is no element of the crime of murder which will be presumed. It would be up to the State to prove each and every element of the crime. To the extent that intoxication would bear on the question of — on any factual question for your determination. If a person is point one zero or more percentage of blood alcohol, there is an irrebuttable presumption that that person is under the influence of alcohol. That might or might not have anything to do with whether the person is further guilty of some element of the crime which is charged in this case. The — I say that it is irrebuttable — in order for it to be an irrebuttable presumption, it is necessary for the State to prove certain things. It’s necessary for them to prove that the *90 machinery was operated by a duly licensed and qualified operator; that the test was properly administered and in accordance with regulations prescribed by the Department of Public Health of the State of Alabama. If the State does show that the machine was — and further to show that the machinery was in proper operating condition at the time. If the State shows all of those things and further shows that there is a reading of point one zero or more, then you will be bound to accept that result as showing that the defendant was, in fact, under the influence at that point in time.” (Emphasis added).
Following this instruction, a bench conference was held in which the defense counsel objected to the trial court's language concerning the “irrebuttable presumption.” Upon the jury’s return, the trial court stated:
“Ladies and gentlemen, one thing that I will correct. If evidence is offered in this case, it’s my understanding that the evidence will pertain to a blood test rather than P.E.I. test which is the breath test. It will be up to you to decide all of the factual questions. Under no circumstances, as I understand it, will a P.E.I. test be involved in any way in the trial of this case. So, to the extent that I mentioned that, that would be incorrect.”
The defense counsel correctly argues that the presumption regarding an individual's state of intoxication, as shown from test results, is rebuttable rather than irrebuttable. The Alabama Supreme Court has stated in Maffett v. Roberts, 388 So.2d 972, 977 (Ala.1980):
“Under this section [§ 32-5-193, the Alabama Chemical Test for Intoxication Act, Code of Alabama (1975)], if the results of the authorized test show that there was 0.10 per cent or more by weight of alcohol in the person’s blood, it is presumed that the person was intoxicated. This statutory presumption, however, is a rebuttable one, and a jury is not compelled to find that the person was intoxicated even though the results show an alcohol level in excess of 0.10 per cent.”
The trial court was extensive in its instructions to the jury regarding the State’s burden of proof as to the elements of murder and the lesser-included offenses. During the oral charge to the jury, the trial court stated:
“In this case, it is charged that the defendant acted with criminal negligence in that he did drive while under the influence of alcohol. The law provides, that is, a person shall not drive or be in actual physical control of any vehicle while there is zero point one zero per cent or more by weight of alcohol in his blood; two, under the influence of alcohol; three, under the influence of a controlled substance to the degree that it renders him incapable of safely driving; four, that the combined influence of alcohol and a controlled substance — under the combined influence of alcohol and a controlled substance to a degree that renders him incapable of safely driving, or under the influence of any substance which impairs the mental or physical faculties of such person to a degree which renders him incapable of safely driving. The jury may consider statutes and ordinances regulating the defendant’s conduct in determining whether he is guilty of criminal negligence. The fact that I’ve read this statute in no way indicates that it has been violated or that such violation is criminal negligence or that such violation proximately caused the results of the deceased. It is for you to decide whether or not the statute is applicable, whether or not it has been violated and whether or not such violation is criminally negligent and whether or not such violation proximately caused the death of the deceased. And, of course, I would add that in making that evaluation, you would also be required to judge whether that action was beyond the scope of criminal negligence and whether it amounted to recklessness on his part.”
These instructions failed to cure the earlier charge by clearly informing the jury that the presumption of intoxication based on the results of the chemical test is rebut- *91 table. By giving the above-stated charge, the trial court invaded the province of the jury. See Yarber v. State, 437 So.2d 1319, 1326 (Ala.Cr.App.1981), reversed on other grounds, 437 So.2d 1330 (Ala.1983), (“A charge upon the effect of the evidence is a charge which instructs the jury that certain facts in issue have been proved, or that certain evidence in the case does or does not establish a certain fact or facts in dispute, or directs the jury what 'their finding on an issue of fact must be if they believe the evidence in the case”). Patterson v. State, 37 Ala.App. 161 66 So.2d 191 (1953), cert. denied, 195 Ala. 152, 66 So.2d 194; Seekers v. State, 35 Ala.App. 40, 44 So.2d 633 (1949), cert. denied 253 Ala. 420, 44 So.2d 633 (1949) (charge should not be given which assumes a fact to be true which is in dispute); Rikard v. State, 209 Ala. 480, 96 So. 412 (1923); Prater v. State, 193 Ala. 40, 69 So. 539 (1915) (charge improper because it assumed a fact which “was in sharp dispute”) Underwood v. State, 179 Ala. 9, 60 So. 842, 846 (1913) (charge properly refused which assumed “as a fact not in dispute a fact about which the evidence was in serious conflict”).
This court has recently addressed this issue under very similar facts in Salazar v. State, 505 So.2d 1287 (Ala.Cr.App.1986). Writing for this court in Salazar, Judge Patterson acknowledged the central role of the determination of whether the appellant was driving under the influence of alcohol under the facts and the “rebuttable and not conclusive” nature of this type of presumption created by § 32-5A-194(b)(3). Id., 505 So.2d at 1291. This court held that “[t]he instruction as it stood, without explanation by the trial court as to the statutory presumption’s rebuttable nature, was highly prejudicial to appellant and constitutes reversible error.” Id., 505 So.2d at 1292.
Despite the evidence presented by the State concerning the appellant’s state of intoxication, this Court must presume that the jury followed the trial judge’s instructions. Kennedy v. State, 472 So.2d 1092, 1105 (Ala.Cr.App.1984), aff'd, Ex parte Kennedy, 472 So.2d 1106 (Ala.1985). Further, because the erroneous charge was given at the commencement of the trial, the jury’s consideration of all of the evidence presented might well have been tainted. See Ex parte Hamilton, 396 So.2d 123 (Ala.1981).
REVERSED AND REMANDED.
All the Judges concur.