Abel M. SILLER, Enriqueta Siller, Mario M. Siller, Angelina Siller, Santiago Siller, and Virginia Siller, Appellants

v.

LPP MORTGAGE, LTD, Appellee.

No. 04–07–00365–CV.

Court of Appeals of Texas, San Antonio.

May 28, 2008.

Rehearing Overruled July 15, 2008.

---

David T. Cain, Law Office of David T. Cain, San Antonio, for Appellant.

Robert L. Soza, Jackson Walker, L.L.P., San Antonio, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Abel M. Siller and his wife Enriqueta; Mario M. Siller and his wife Angelina; and Santiago Siller and his wife Virginia (collectively, "the Sillers") sued LPP Mortgage ("LPP") for wrongful foreclosure of property they claimed was their individual homestead property after LPP foreclosed on 520 acres of property ("the property") located in La Salle County. The case was tried before a jury, which found that the 520 acres was property of the Siller Brothers partnership and that LPP did not wrongfully foreclose on the property. The Sillers appeal claiming: (1) the evidence was legally and factually insufficient to support the jury's finding the property was partnership property; (2) the evidence was legally and factually insufficient to support the jury's finding the foreclosure was not wrongful; (3) the trial court erred in failing to remove a juror or, alternatively, to grant a new trial because of jury misconduct; and (4) the trial court erred in admitting certain documents that were irrelevant. Because we conclude the Sillers are entitled to a new trial on whether LPP wrongfully foreclosed on the property, we reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1967, Abel M. Siller, Mario M. Siller, Santiago Siller, and Jose Siller, Jr. purchased 520 acres of land in La Salle County, and the property was deeded to the four brothers individually. However, after

purchasing the property, the brothers formed a partnership and began doing business together growing vegetables and raising cattle on the property. The property is mainly farming and grazing land, but there are also two houses and some barns on the property. Abel and his wife have lived continually in the main house on the property, while the other brothers and their wives have lived on and off the property over the years. According to the Sillers and their wives, they all claim a homestead interest in the property.

In the late 1970's and early 1980's, after suffering through a series of natural disasters, Mario, Abel, and Santiago sought a loan from the Small Business Administration ("SBA").[1] The SBA promissory note was signed by the three brothers and their wives. The brothers also signed a deed of trust pledging the property as collateral for the loan. In the late 1990's, the Sillers began having trouble paying on the loan. To prevent foreclosure on the property, the partnership filed for bankruptcy. At some point, the SBA notified the Sillers that the note had been sold to LPP. LPP in turn notified the Sillers that full payment was due on the note. Although the Sillers maintain they have always claimed a homestead exemption on the property, the Sillers had represented on various documents that the property was partnership property. For instance, partnership financial statements list the property as partnership property. When the partnership filed for bankruptcy, it listed the property as partnership property. The Sillers paid taxes on the property to various taxing authorities from the partnership account. The partnership claimed an agricultural exemption for the property. The partnership filed income tax returns listing the

property as partnership property. The individual brothers and their wives, on the other hand, did not list the property on their individual income tax returns. When the Sillers applied for the SBA loan, they represented that the partnership owned the property and that there were no homestead rights on the property. Santiago admitted he wrote a letter during the course of the litigation stating the property had always been partnership property, but during his trial testimony he claimed he was mistaken.

LPP went forward with foreclosure, with September 4, 2001 set as the date for the foreclosure sale. On that date, the brothers went to the courthouse, where, according to them, the notice of sale was not posted. The clerk who posts foreclosure notices in the county identified the foreclosure notice because it had her signature on it, it was file-stamped, and it had staple holes where it had been attached to the bulletin board. She testified she usually posts notices within five to ten minutes after file-stamping them. However, she admitted she only "vaguely" recalled posting the notice, and she did not remember whether she actually posted it. Elizabeth Martinez, the county attorney who was appointed substitute trustee, handled the foreclosure sale. She testified she knew the notice had been posted at the appropriate time and remained posted until the day of the foreclosure sale because she saw it posted on the bulletin board outside the district clerk's office. Martinez conducted the sale, although there were no bidders. However, the bank had instructed her to submit a bid for them as a credit on the account. After the sale, Martinez signed the substitute trustee's deed and filed it with the clerk's office. Martinez testified

---

1. At some point, Jose withdrew from the partnership, and he died prior to the brothers seeking the SBA loan.

there were two typographical errors on the substitute trustee's deed—it indicated the posting was in Cherokee County instead of La Salle County, and it stated the note had been signed in 1991 instead of 1981. According to Martinez, the tax appraisal value of the property was about $225,000. At trial, Abel valued the property at $4,000 per acre, and Mario and Santiago valued the property at $3,500 per acre. The property sold for $125,000.

The Sillers brought suit against LPP, asserting a cause of action for wrongful foreclosure on the grounds that the property was their homestead and the property sold for grossly inadequate consideration as a consequence of irregularities in the sale. At trial, the jury charge contained three questions: (1) whether the property was "partnership property," (2) if the jury answered "no" to the first question, they were instructed to answer whether the property was the "homestead" of any of the Sillers, and (3) did LPP wrongfully foreclose on the property. In a ten to two verdict, the jury answered affirmatively on question one, they did not answer question two, and they answered question number three in the negative. The trial court entered judgment in accordance with the jury verdict, and the Sillers now appeal.

## LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

■ At the close of the evidence, the jury was asked if, at the time the deed of trust was executed on or about February 9, 1981, the property was "partnership property." The jury responded "Yes." In their first issue on appeal, the Sillers argue the evidence is legally and factually insufficient to support this finding. In reviewing a legal sufficiency challenge, we determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in

their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002). We will sustain a no-evidence point if a finding is not supported by "anything more than a scintilla of evidence." *See Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). In making this determination, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827.

■ In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding, and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). It is well established that jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819; *see also McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Therefore, a jury confronted with conflicting evidence may choose to believe one witness and disbelieve others; it may resolve inconsistencies in the testimony of any witness; or it may accept lay testimony over that of experts. *City of Keller*, 168 S.W.3d at 819–20.

■ The Sillers claim the property was their individual homestead property as opposed to partnership property and, therefore, was subject to protection from foreclosure pursuant to the Texas Constitution. *See* TEX. CONST. art. XVI, § 50 (providing that no lien on the homestead shall ever be valid, except for purchase money or improvements made on the property); *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129–30 (Tex.1991)

(holding that lien on homestead property that is not constitutionally permitted is void). In determining whether a lien is unconstitutionally void, we look to the conditions existing at the time the lien is given. *Braden Steel Corp. v. McClure,* 603 S.W.2d 288, 294 (Tex.Civ.App.-Amarillo 1980, no writ). For a homestead right to attach, "there must be an existing bona fide intention to dedicate the property as a homestead, and the intent must be accompanied by such acts of preparation and such prompt subsequent occupation as will amount to notice of the dedication." *Kendall Builders, Inc. v. Chesson,* 149 S.W.3d 796, 809 (Tex.App.-Austin 2004, pet. denied).

 However, if the property was, in fact, partnership property, it could not be considered property of the individual partners. TEX. BUS. ORG.CODE ANN. § 152.101 (Vernon 2007) ("Partnership property is not property of the partners. A partner or a partner's spouse does not have an interest in partnership property."). Thus, the Sillers could not claim homestead protection in the partnership property. *See In re Cole,* 205 B.R. 382, 385–86 (E.D.Tex. 1997) (stating partner cannot claim homestead interest in property belonging to the partnership). Whether the property used in the partnership operation is owned by the partnership is a question of intention. *Littleton v. Littleton,* 341 S.W.2d 484, 489 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.). Mere use of property in a partnership operation does not make it an asset of the partnership. *Id.*

In support of their argument that the property was their homestead, the Sillers point to evidence that the deed to the property was in the individual brothers' names and that all of them lived on the property at various times. Further, they point to their testimony that, although the property was used in the partnership business operations, they intended the property to be their homestead and not partnership property. The Sillers argue that because the validity of a deed of trust is determined at the time it was executed, this court may not consider evidence of acts or statements subsequent to 1981 when the deed of trust was executed.

LPP, on the other hand, points to evidence which, it urges, shows an intent on the part of the Sillers to treat the property as partnership property. Specifically, LPP relies on testimony from the Sillers that they purchased the property at about the same time they formed their partnership and that they acquired the property for the purpose of running a farming and ranching business on the property. LPP introduced documents showing the partnership represented to taxing authorities that the property was a partnership asset and paid property taxes from the partnership checking account. The Sillers also filed partnership tax returns in which they obtained tax benefits on the property. LPP further points to documents demonstrating that the Sillers represented to the bankruptcy court that the property was partnership property. Most notably, LPP focuses on the testimony of Santiago Siller and his wife, Virginia, wherein they admit they signed a letter stating the property has always been partnership property. And, although Santiago testified he had made a mistake in writing the letter, he also admitted he used the property as collateral for the SBA loan because he thought it was partnership property.

Considering the evidence and inferences that support the jury's finding that the property was partnership property, we conclude the evidence is legally sufficient. And, considering all the evidence, we conclude the evidence is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Be-

cause we conclude the evidence supports the jury's finding that the property was property of the partnership, we do not address the Sillers' argument that the evidence supports a contrary finding that the property was their homestead.

## JUROR DISQUALIFICATION

In their third issue, the Sillers assert the trial court erred by not striking a juror and declaring a mistrial because the juror failed to disclose her personal knowledge about the facts of the case. During voir dire, the Sillers' attorney asked the panel if "anyone ... [had] heard anything about this case before today." None of the jurors responded. However, at the close of evidence, one of the jurors, Mary Kelly, approached the bench to inform the court and the attorneys that she had been present at the foreclosure sale and she knew "beyond a doubt" that the notice of foreclosure sale had been posted. The Sillers' attorney moved to strike Kelly and for a mistrial, which the court denied.

On appeal, LPP argues the Sillers were not entitled to have Kelly stricken from the jury because their attorney did not more specifically ask whether any venire-member had seen the foreclosure notice or witnessed the foreclosure sale. We disagree. This is not a case where a juror intentionally gave an erroneous or incorrect answer during voir dire. Kelly explained that Elizabeth Martinez's testimony describing the foreclosure sale "jolted" her memory and she realized, for the first time, that she had been at the courthouse on the day of the sale. Therefore, Kelly's silence when the venire-panel was asked if anyone had "heard anything about this case," was truthful to the extent of her knowledge at the time. Thus, it is apparent that more specific questions during voir dire would not have elicited a different answer.

On appeal, the Sillers argue Kelly was not competent to serve as a juror because she personally witnessed the foreclosure sale, and the trial court's refusal to strike her from the jury or declare a mistrial resulted in a ten to two verdict impermissibly rendered by less than ten qualified jurors. We agree. An individual is disqualified from serving on a jury in a particular case if the individual "is a witness in the case." TEX. GOV'T CODE ANN. § 62.105(1) (Vernon 2005). As used in the Government Code, "witness" is not limited to those who have testified at trial, and may apply to those with personal knowledge of the facts of the case. *Davis v. State*, No. 07–04–00104–CR, 2005 WL 3115286, at *2 (Tex.App.-Amarillo Nov.22, 2005, pet. ref'd) (mem. op., not designated for publication). Persons with knowledge of material facts may be disqualified as a "witness in the case" "because they are likely to decide a case based on what they personally saw or heard rather than on what they see and hear in court." *Id.; see also Nelson v. State*, 58 S.W. 107, 107 (Tex.Crim.App.1900) (holding trial court erred in not granting a new trial upon determination that a juror was present immediately after the killing and was "cognizant of the main, salient features of the case").

One of the contested issues at trial was whether LPP wrongfully foreclosed on the La Salle property. In answering this jury question, the jury was instructed that a "foreclosure is wrongful if there was: (1) a defect or irregularity in the foreclosure sale proceedings" and that a "defect" or "irregularity" occurred if LPP "failed to comply with the terms of the Deed of Trust...." At trial, the Sillers argued the proceedings were defective because the notice of the foreclosure sale was not posted when they went to the courthouse on the day of the sale. Elizabeth Martinez, on

the other hand, testified the notice was posted from August 9, 2001 (the date the notice was filed with the county clerk) to September 4, 2001 (the date of the sale). Thus, whether the notice of foreclosure sale was properly posted was a contested fact issue. Kelly said she had not told any of the other jurors about what she saw at the foreclosure sale, but she said the jurors were debating whether the notice was posted. Kelly stated, "But I know beyond a doubt that it was there." Kelly said she actually read the notice a few moments before the sale started.

We conclude that Kelly's first-hand knowledge of whether the notice was posted on the day of the foreclosure sale made her a "witness" within the meaning of section 62.105(1). *See Davis*, 2005 WL 3115286, at *2; *see also Wyle v. State*, 777 S.W.2d 709, 712–13 (Tex.Crim.App.1989) (construing Texas Code of Criminal Procedure article 35.16(a)(6), which provides for striking prospective juror for cause when that person "is a witness in the case," to include not just testifying witnesses but also "one who has personal knowledge of the facts of the case"). Although she may not have shared her knowledge with other jurors, there can be no question that Kelly's knowledge resulted in her implied finding that there was no defect or irregularity in the foreclosure sale proceedings. Therefore, we conclude Kelly was disqualified to serve as a juror in the underlying lawsuit as a matter of law.

 With exceptions that do not apply here, "a verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten or more members of an original jury of twelve...." Tex.R. Civ. P. 292(a). Kelly was one of the ten jurors who voted in favor of a finding that LPP did not wrongfully foreclose on the property. However, her disqualification as a matter of law from serving on the jury resulted in an unfavorable verdict being rendered against the Sillers by fewer than ten qualified jurors. Under such circumstances, "if the rules and statutes governing the qualifications of jurors and the requisites of verdicts are to have any effect, litigants similarly situated to [the Sillers] must be held to have suffered material injury as a matter of law." *Palmer Well Servs., Inc. v. Mack Trucks, Inc.*, 776 S.W.2d 575, 577 (Tex.1989). "Therefore, because this is not an instance in which a verdict could have been rendered by less than ten jurors, as a matter of law [the Sillers were] materially injured by the rendition of an unfavorable verdict by less than the requisite number of qualified jurors." *Id.* Accordingly, the Sillers are entitled to a new trial.

### Conclusion

We reverse the trial court's judgment and remand for a new trial.[2]

---

2. We decline to address the Sillers' fourth issue regarding the admission into evidence of certain defense exhibits because it is not dispositive to this appeal. Tex.R.App. P. 47.1.