

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00496-CV

Abel M. **SILLER**, Enriqueta Siller, Mario M. Siller, Angelina Siller, Santiago Siller, and
Virginia Siller,
Appellants/Cross-Appellees

v.

**LPP MORTGAGE, LTD**,
Appellee/Cross-Appellant

From the 218th Judicial District Court, La Salle County, Texas
Trial Court No. 02-04-00020-CVL
Honorable Fred Shannon, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Marialyn Barnard, Justice

Delivered and Filed:  April 10, 2013

AFFIRMED

This appeal arises from a wrongful foreclosure suit brought by the Sillers against LPP

Mortgage, Ltd. After a jury verdict in favor of the Sillers, the trial court rendered a judgment

notwithstanding the verdict in favor of LPP Mortgage. On appeal, the Sillers argue that the trial

court erred in (1) applying the doctrine of judicial estoppel, (2) applying the doctrine of res

judicata, and (3) finding that there was no evidence to support the jury's finding that the notice of

foreclosure sale had not been posted on the courthouse bulletin board for twenty-one days prior

to the foreclosure sale. In the event we determine the trial court erred in granting judgment

notwithstanding the verdict, LPP Mortgage brings the following cross-issues: (1) the jury's finding that the notice of foreclosure sale was not posted on the courthouse bulletin board for twenty-one days prior to the sale is against the great weight and preponderance of the evidence; (2) the Sillers are not entitled to the equitable remedy of rescission of the foreclosure sale; and (3) the jury's finding that the property in question was not partnership property at the time it was acquired is against the great weight and preponderance of the evidence. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1967, four brothers, Abel M. Siller, Mario M. Siller, Santiago Siller, and Jose Siller, Jr. purchased 520 acres of land in La Salle County, and the property was deeded to the four brothers. After purchasing the property, the brothers formed a partnership and began doing business together by growing vegetables and raising cattle on the property. While the property is mainly farming and grazing land, there are two houses and some barns on the property. Abel and his wife have lived continually in the main house on the property. The other brothers and their wives have lived on and off the property over the years. They all claim a homestead interest in the property.

In the late 1970s and the early 1980s, after suffering through a series of natural disasters, Mario, Abel, and Santiago sought a loan from the Small Business Administration ("SBA") in the amount of $234,000.00. The SBA promissory note was signed by the three brothers and their wives. The brothers also signed a deed of trust pledging their interest in the property as collateral for the loan. The partnership continued to operate its farming and ranching business, but around 1983 Jose Siller left the partnership. The three remaining brothers, however, continued to operate the partnership. In the 1990s, the partnership had further financial difficulties and had difficulty making payments on the SBA loan.

In July 1999, to prevent foreclosure on the property, the partnership filed for Chapter 11 bankruptcy relief. Accompanying the partnership's Chapter 11 petition was a list of assets, which included "520 acres, La Salle, County" as an asset of the partnership; and a list of creditors, which listed the SBA as having a claim of $108,500.00. None of the individual partners filed for bankruptcy. The partnership later filed in bankruptcy court its First Amended Plan of Reorganization, proposing the following:

> Class 2 shall consist of the claim of the Small Business Administration ("SBA"), which resulted from debt lawfully owed by the Debtor to SBA prior to the filing of the petition for relief and which is secured by Debtor's real property, generally described as 520 acres located in LaSalle County, Texas . . . .

The Plan of Reorganization provided that the SBA "shall retain its statutory lien" and proposed that the partnership would be allowed to continue making payments on the SBA's Note over ten years at an annual interest rate of five percent. On December 29, 1999, the partnership's Plan of Reorganization was confirmed by the bankruptcy court.

Following the partnership's bankruptcy, the SBA assigned the Promissory Note and Deed of Trust to LPP Mortgage. When the Sillers failed to make the first annual payment required by the Plan of Reorganization and thereby defaulted on the Note, LPP Mortgage notified the Sillers by certified mail that the Note was in default and that the La Salle Property would be foreclosed if payment arrangements were not made. On August 9, 2001, LPP Mortgage sent the Sillers a notice of foreclosure sale that was to be held on September 4, 2001. On September 4, 2001, Elizabeth Martinez, the county attorney for La Salle County who was appointed substitute trustee, handled the foreclosure sale and sold the property to LPP Mortgage for the amount of $125,237.35.

The Sillers then sued LPP Mortgage for wrongful foreclosure on the grounds that the property was their homestead and the property sold for grossly inadequate consideration as a

consequence of irregularities in the sale. At trial, the jury charge contained three questions: (1) whether the property was "partnership property"; (2) if the jury answered "no" to the first question, it was instructed to answer whether the property was the "homestead" of any of the Sillers; and (3) whether LPP Mortgage wrongfully foreclosed on the property. In a ten to two verdict, the jury answered affirmatively on question one. It did not answer question two, and it answered question three in the negative. The trial court then signed a judgment in accordance with the verdict, and the Sillers appealed. On appeal, this court concluded that one of the jurors was disqualified to serve as a juror in the underlying lawsuit as a matter of law. *See Siller v. LPP Mortgage, Ltd.*, 264 S.W.3d 324, 331 (Tex. App.—San Antonio 2008, no pet.). And, because the juror's disqualification would result in an unfavorable verdict being rendered against the Sillers by fewer than ten qualified jurors, this court held that the Sillers were entitled to a new trial on whether LPP wrongfully foreclosed on the property. *Id.* at 326, 331.

At the second trial, the jury was once again asked three questions. This time, however, the jury determined that the property was *not* partnership property at the time it was acquired in May 1967. The jury also determined that the property was the homestead of Abel Siller and Enriqueta Siller, but that it was not the homestead of Mario Siller, Virginia Siller, Santiago Siller, or Perfecta Siller at the time the deed of trust at issue was signed on February 9, 1981. The jury also found that the notice of foreclosure sale was *not* posted on the La Salle County Courthouse bulletin board at least twenty-one consecutive days prior to the foreclosure sale. On April 21, 2011, the trial court signed a final judgment in conformity with the jury's verdict. LPP Mortgage then timely filed its Motion for Judgment Notwithstanding the Verdict, Motion to Disregard Jury Verdict, and Motion for New Trial. On June 21, 2011, the trial court granted the motion:

- It is ORDERED, ADJUDGED, AND DECREED that Judgment Notwithstanding the Verdict be GRANTED as to Question 1 and Question 2 because the evidence conclusively establishes the defense of judicial estoppel and/or res judicata, which preclude [the Sillers] from asserting that the Property is not owned by the Partnership;

- It is further ORDERED, ADJUDGED, AND DECREED that Judgment Notwithstanding the Verdict be GRANTED as to Question 3 because the undisputed evidence conclusively establishes that the notice of foreclosure was posted at least 21 days before the foreclosure sale.

- Based on this ruling, the Final Judgment signed on April 21, 2011, is hereby WITHDRAWN and SET ASIDE.

Also on June 21, 2011, the trial court signed an Amended Final Judgment, ordering that the Sillers take nothing by their suit and that LPP Mortgage recover from the Sillers title to and possession of the property. The Sillers bring this appeal, arguing that the trial court erred in granting judgment notwithstanding the verdict because (1) LPP Mortgage waived the defense of estoppel by failing to submit a request for a jury question on judicial estoppel; (2) LPP Mortgage failed to conclusively establish application of judicial estoppel; (3) LPP Mortgage waived the defense of res judicata by failing to submit a request for a jury question; (4) LPP Mortgage did not conclusively establish the application of res judicata; and (5) there was some evidence to support the jury's finding that the notice of foreclosure was not posted at least twenty-one days before the foreclosure sale. LPP Mortgage has brought a cross-appeal, arguing that if the trial court's ruling is not affirmed, then it is entitled to a new trial because (1) the jury's finding that the notice of foreclosure sale was not posted on the courthouse bulletin board at least twenty-one days before the foreclosure sale is against the great weight and preponderance of the evidence; and (2) the jury's finding that the property was not partnership property is against the great weight and preponderance of the evidence. LPP Mortgage also argues that the Sillers are not entitled to the equitable remedy of rescission of the foreclosure sale.

**JUDICIAL ESTOPPEL**

Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009). "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from 'playing fast and loose' with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993). The doctrine was designed to prevent "cold manipulation and not an unthinking or confused blunder," *Johnson Service Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 175 (5th Cir. 1973), and is applied when a party uses intentional self-contradiction as a means of obtaining an unfair advantage in a legal proceeding. *In re Coastal Plains*, 179 F.3d 197, 205 (5th Cir. 1999). Here, LPP Mortgage argued to the trial court that the Sillers are judicially estopped from asserting in this lawsuit that the property is not owned by the partnership because in the previous federal bankruptcy proceeding they asserted that the property was an asset of the partnership.

The parties first disagree on whether federal or Texas law regarding judicial estoppel applies in this case. The Sillers argue that "there is no consensus approach to judicial estoppel among the federal circuits" and that "[t]his inconsistency in the application of judicial estoppel among the federal circuit courts creates confusion and leads to uncertainty as to what approach should be followed." *See In re Estate of Loveless*, 64 S.W.3d 564, 579–80 (Tex. App.—Texarkana 2001, no pet.) (questioning whether Fifth Circuit cases should be followed given lack of consensus among federal circuits regarding judicial estoppel). According to the Sillers, "[a]t least in Texas the law on judicial estoppel is consistent and its application is uniform." LPP Mortgage responds that when judicial estoppel is raised based on a position taken in a prior

bankruptcy proceeding, Texas courts apply federal law as developed by the Fifth Circuit. We agree with LPP Mortgage. A majority of Texas courts do apply federal judicial estoppel law when the prior proceeding was in bankruptcy court. *See Bailey v. Barnhart Interest, Inc.*, 287 S.W.3d 906, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Tow v. Pagano*, 312 S.W.3d 751, 756 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Cleaver v. Cleaver*, 140 S.W.3d 771, 774–75 (Tex. App.—Tyler 2004, no pet.); *Dallas Sales Co. v. Carlisle Silver Co.*, 134 S.W.3d 928, 931 (Tex. App.—Waco 2004, pet. denied); *Stewart v. Hardie*, 978 S.W.2d 203, 208 n.1 (Tex. App.—Fort Worth 1998, pet. denied); *Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 n.1 (Tex. App.—El Paso 1997, writ denied); *see also Thompson v. Continental Airlines*, 18 S.W.3d 701, 703 n.1 (Tex. App.—San Antonio 2000, no pet.) ("We will apply federal law to the issue of judicial estoppel in order to promote the goal of uniformity and predictability in bankruptcy proceedings and to give proper effect to the judgment of the bankruptcy court."). And, the primary purpose of judicial estoppel is to preserve the integrity of the prior judicial proceeding. *See Coastal Plains*, 179 F.3d at 205 & n.2. That is, "the purpose of *judicial estoppel* is *not* to protect the litigants; it is to protect the integrity of the judicial system." *Id.* at 210 (emphasis in original). "Thus, it makes sense to apply the law applicable to the prior proceeding." *Dallas Sales*, 134 S.W.3d at 931. Further, under the similar doctrine of res judicata, the Texas Supreme Court has held that "the preclusive effect of a federal judgment is determined by federal law." *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 287 (Tex. 2002); *see also Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1991) ("[F]ederal law controls the determination of whether res judicata will bar a later state court proceeding.). Because "[t]his approach operates to preserve the principle of finality of judgments," the Texas Supreme Court's "approach in res judicata cases serves to preserve the integrity of prior federal proceedings." *Dallas Sales*, 134 S.W.3d at 931. Similarly, applying

federal law when judicial estoppel is raised based on a position taken in a prior bankruptcy proceeding also serves to preserve the integrity of prior federal proceedings. *Id.* Therefore, we will apply federal law regarding judicial estoppel.

The Sillers first argue that the trial court erred in applying the doctrine of judicial estoppel because LPP Mortgage waived the defense by not requesting a jury question on judicial estoppel. They argue that even if we apply federal law, federal law on judicial estoppel *requires* that the party who made the prior inconsistent statement have acted intentionally, not inadvertently. According to the Sillers, because a person's motivation or intent is considered to be a question of fact, LPP Mortgage waived its defense of judicial estoppel by not requesting that the jury make this fact determination. We disagree with the Sillers. Under federal law, "judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *see also Beall v. United States*, 467 F.3d 864, 870 (5th Cir. 2006) (explaining that in "especially egregious case[s] wherein a party has successfully asserted a directly contrary position," federal circuit courts may even raise judicial estoppel *sua sponte*). Further, while the Supreme Court has named several factors that "*typically* inform" the decision of whether a court should apply the doctrine in a particular case, it has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," explaining instead that different considerations "may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 750–51; *see also Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (noting that because the doctrine of judicial estoppel is equitable in nature, it should be "applied flexibly, with an intent to achieve substantial justice" and that application of the doctrine "should be guided by a sense of fairness, with the facts of the particular dispute in mind"). Thus, LPP Mortgage did not waive its judicial estoppel defense by failing to submit the question of inadvertence to the jury.

Because judicial estoppel is an equitable doctrine and the decision of whether to invoke it within a court's discretion, we review a court's decision to invoke the doctrine for abuse of discretion. *Coastal Plains*, 179 F.3d at 205. And, because it is an equitable doctrine, it "cannot be reduced to a precise formula or test." *Zedner v. United States*, 547 U.S. 489, 504 (2006). However, "several factors typically inform the decision whether to apply the doctrine in a particular case." *Id.* (quoting *New Hampshire*, 532 U.S. at 750). "First, a party's later position must be clearly inconsistent with its earlier position." *New Hampshire*, 532 U.S. at 750. "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position." *Id.* Third, a court may consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Further, in the context of a prior bankruptcy proceeding, a court should apply the doctrine of judicial estoppel "against the backdrop of the bankruptcy system and the ends it seeks to achieve." *Reed*, 650 F.3d at 574 (citations omitted). "These ends are to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands, and to grant a fresh start to the honest but unfortunate debtor." *Id.* (citations omitted). "Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.*

The Sillers argue that the trial court erred in applying the doctrine of judicial estoppel to this case because they were not parties to the bankruptcy proceeding. They emphasize that it was the partnership that filed the bankruptcy proceeding, not them individually. Thus, they argue that the doctrine of judicial estoppel cannot bar them from claiming ownership of the 520 acres in this lawsuit. Federal courts, however, have held that those in privity with a prior judgment are

barred by the doctrine of judicial estoppel in a subsequent action. *See In re 815 Walnut Assocs.*, 183 B.R. 423, 431–32 (E.D. Pa. 1995) (explaining that "judicial estoppel clearly may be applied against a party to a prior lawsuit *or someone in privity with that party*") (emphasis in original); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1168–69 (C.D. Ca. 2008) ("To determine whether plaintiffs are judicially estopped by statements to the California inheritance tax appraiser made on behalf of Monroe's estate, the court must first examine whether plaintiffs are in privity with Frosch, such that they may be deemed the "same party" as that which participated in the tax proceeding.") *aff'd*, 692 F.3d 983 (9th Cir. 2012); *see also Maitland v. Univ. of Minn.*, 43 F.3d 357, 363-64 (8th Cir. 1994) (explaining that under the doctrines of collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel, "the party who is to be estopped, *or one in privity with that party*, must have asserted a fact or claim, or made a promise, that another party relied on, that a court relied on, or that a court adjudicated") (emphasis added); *Long v. Knox*, 155 Tex. 581, 588, 291 S.W.2d 293, 297 (1956) (holding that husband's heir was barred by doctrine of judicial estoppel because heir was in privity with husband).

The Sillers argue that they are not in privity with the partnership. People may be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests may be represented by a party to the action; and (3) they may be successors in interest, deriving their claims through a party to the prior action. *E.E.O.C. v. Jefferson Dental Clinics*, 478 F.3d 690, 694 (5th Cir. 2007). In this case, there was evidence that Abel Siller, Mario Siller, and Santiago Siller had the ability to control the federal bankruptcy lawsuit. They had been partners of the partnership since it was formed in 1967. They were the only partners of the partnership at the time of the bankruptcy proceeding in 1999 and acted on behalf of the partnership in the bankruptcy proceeding. They made the decision for the partnership to hire the

attorney to represent it in the bankruptcy proceeding. They met with the attorney regarding the bankruptcy proceeding, and they signed numerous documents relating to the bankruptcy proceeding. Several of these documents stated that the partnership owned the property at issue. Thus, the trial court did not abuse its discretion in applying the doctrine of judicial estoppel to the Sillers as there is evidence to support them being in privity with the partnership.

The Sillers also argue that the trial court erred in applying the doctrine of judicial estoppel to Enriqueta Siller.[1] We disagree. Homestead protection "can arise only in the person or family who has a present possessory interest in the subject property." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991); *see* TEX. CONST. art XVI, § 50(b) ("An owner or claimant of the property claimed as homestead may not sell or abandon the homestead without consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law."). And, as a "partner or a partner's spouse does not have an interest in partnership property," TEX. BUS. ORG. CODE ANN. § 152.101 (West 2007), if the property is partnership property, neither the partners nor their spouses could claim it as their homestead. *See Siller*, 264 S.W.3d at 329. It is undisputed that Enriqueta Siller had no individual interest in the property. Any rights she had to the property were derivative of her spouse, Abel Siller. And, because the doctrine of judicial estoppel may extend to a wife, because her rights are derivative of her spouse and because she is in privity with her husband, the trial court did not abuse its discretion. *See Long*, 155 Tex. at 588, 291 S.W.2d at 297 (explaining that judicial estoppel extended to daughter from father even though daughter was not party to previous proceeding because her claim was derivative and she was in privity with him); *cf. Cuauhtli v. Chase Home Finance LLC*, 308 Fed.

---

[1] The jury found in Question No. 2 that the property was the homestead of Abel Siller and his wife, Enriqueta Siller. The trial court granted a judgment notwithstanding the verdict on Question 2 because it found that "the evidence conclusively establishes the defenses of judicial estoppel and/or res judicata, which preclude Plaintiffs and Intervenors from asserting that the Property is not owned by the Partnership."

Appx. 772, 773–74 (5th Cir. 2009) (explaining that although the husband and wife were not identical parties, the trial court correctly concluded that their relationship was sufficient for claim preclusion purposes).[2]

In reviewing this record, we find no abuse of discretion by the trial court in applying the doctrine of judicial estoppel. The evidence shows that Abel Siller, Mario Siller, and Santiago Siller filed bankruptcy on behalf of the partnership and affirmed in that proceeding that the property was owned by the partnership and was an asset of the partnership. The bankruptcy petition and its accompanying schedules, which were signed by Abel Siller under penalty of perjury, expressly state that the partnership owns "520 acres, La Salle County" and was indebted to the SBA for $108,500.00." The partnership's second amended summary of schedules represented that the partnership owned "520 acres in La Salle County." The first amended plan of reorganization, which was signed by Mario M. Siller, stated that the La Salle Property was an asset of the partnership; the partnership owed a valid debt to the SBA, and that debt was secured by a valid deed of trust on the La Salle Property. When making these statements to the bankruptcy court, the Sillers were under an express, affirmative duty to disclose all assets, and this duty is a continuing one. *In re Coastal Plains, Inc.*, 179 F.3d at 207–08; *see also Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (explaining the doctrine of judicial estoppel applies to more than just sworn statements of a party and has never held that the doctrine applies only to a party's sworn statements). Given these repeated assertions to the bankruptcy court, there is evidence that the Sillers' conduct was not inadvertent.

---

[2] We note that the Sillers cite *Andrews v. Security National Bank*, 121 Tex. 409, 50 S.W.2d 253, 256 (1932); *Geldard v. Watson*, 214 S.W.3d 202, 208 (Tex. App.—Texarkana 2007, no pet.); and *In re Daves*, 770 F.2d 1363, 1469 (5th Cir. 1985), for the proposition that homestead rights of wives are independent and cannot be destroyed by actions of their spouses. However, those cases are distinguishable from the facts presented here. Unlike the cases cited by the Sillers, at issue in this case is not whether Abel Siller encumbered or conveyed away the homestead rights of his spouse. Instead, the issue is whether Abel and Enriqueta are barred under the doctrine of judicial estoppel from asserting homestead rights in the property because the bankruptcy proceeding established that they do not actually own the property.

After filing for bankruptcy and successfully preventing the foreclosure of the property, the Sillers are now taking the opposite position in this lawsuit that the property was not owned by the partnership. Further, there is evidence that the federal bankruptcy court accepted the Sillers' prior position that the property was owned by the partnership. We therefore find no abuse of discretion by the trial court in applying the doctrine of judicial estoppel.[3]

### NOTICE OF FORECLOSURE

In Question No. 3, the jury was asked whether the notice of foreclosure sale was "in fact posted on the La Salle County Courthouse bulletin board at least 21 consecutive days prior to the foreclosure sale." The jury answered, "No." The trial court granted judgment notwithstanding the verdict as to Question 3 because it found that the "undisputed evidence conclusively establishe[d] that the notice of foreclosure was posted at least twenty-one days before the foreclosure sale." On appeal, the Sillers argue that the trial court erred in making this finding.

A trial court may disregard a jury verdict and render a judgment notwithstanding the verdict if no evidence supports the jury finding on an issue necessary to liability or if a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). We review a judgment notwithstanding the verdict under a no-evidence standard, "meaning we credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins.*, 289 S.W.3d 828, 830 (Tex. 2009); *see also Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) ("A trial court's decision to grant a judgment notwithstanding the verdict should be affirmed if there is no evidence to support one or more of the jury findings on issues necessary to

---

[3] Having found no abuse of discretion by the trial court in applying the doctrine of judicial estoppel, we need not determine whether the trial court erred in applying the doctrine of res judicata.

liability."). "If more than a scintilla of evidence supports the jury's findings, the jury's verdict and not the trial court's judgment must be upheld." *Wal-Mart*, 102 S.W.3d at 709.

In Texas, a foreclosure sale may be rendered invalid based on noncompliance with the deed of trust and statutory law. Section 51.002(b)(1) of the Property Code requires notice of the foreclosure sale to be given at least twenty-one days before the date of the sale by "posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold." TEX. PROP. CODE ANN. § 51.002(b)(1) (West Supp. 2012). The deed of trust also required the substitute trustee to "advertis[e] the time, place and terms of said sale, and the property to be sold, by posting for at least twenty-one (21) consecutive days next before the date of sale written or printed notices thereof at the courthouse door of the county in which the mortgaged property or real estate is located." Because a trustee's power to sell the property is derived from the deed of trust and statute, compliance with these requirements is considered a prerequisite to the trustee's right to make the sale. *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983). Thus, a debtor may recover damages for common-law wrongful foreclosure if the mortgagee fails to comply with statutory or contractual terms. *First State Bank v. Keilman*, 851 S.W.2d 914, 921–22 (Tex. App.—Austin 1993, writ denied).

Here, the evidence is undisputed that the notice of foreclosure sale was posted on the bulletin board of the La Salle County Courthouse on August 9, 2001. Elizabeth Martinez, the county attorney and substitute trustee in this case, testified that she filed the notice of foreclosure sale on August 9, 2001, and made sure that it was posted on the courthouse bulletin board that same day. Because Martinez's office is right in front of the bulletin board, she saw that the notice had been posted on the bulletin board that same day. Margarita Esqueda, the La Salle County Clerk, testified that although she had no personal recollection of posting the notice, she knew she

had posted the notice on August 9, 2001. Esqueda explained that it was the practice of the clerk's office to post a notice of foreclosure sale "right away," within "five" or "ten minutes" of it being filed. According to Esqueda, she was the one who file-stamped the notice of foreclosure sale on August 9, 2001, and she was the one who issued a receipt to Martinez. And, Esqueda testified that it was the practice of the clerk's office for the clerk who filed a notice of foreclosure sale to then immediately post the notice on the bulletin board. Esqueda testified that the bulletin board is in a glass shadowbox, which is locked, and only she and her deputy clerks have access to the key.

There is also undisputed evidence that the notice of foreclosure sale was removed from the bulletin board after the foreclosure sale on September 4, 2001, more than twenty-one days after it was posted. Martinez testified that because her office was right across from the bulletin board, she "normally went to the board on a day-to-day basis" to confirm whether the notice was still posted, and "it was always there." According to Martinez, she saw the notice on the bulletin board the day of the foreclosure sale. Martinez testified that she conducted the foreclosure sale on the courthouse steps at 1:30 p.m. on September 4, 2001, and that another county employee was present as a witness. Because there were no bidders, she made a bid on behalf of the bank, as she had been instructed by the bank, received that bid, and executed the substitute trustee's deed, which conveyed title back to the bank. After the sale, she went to the clerk's office, told them that she had conducted the sale, and asked them to take the notice down. Martinez testified that she then saw one of the deputy clerks take the notice down from the bulletin board. Mary Kelly, a member of the public, testified that she was at the La Salle County Courthouse waiting to visit a county judge. To pass the time, she started looking at the notices on the bulletin board. She started reading the notice of foreclosure sale about the Sillers' property and noticed that the sale was going to happen that same day. Her husband reminded her who the Sillers were. She then

heard two women talking. One of them asked her if she was there for the sale. She replied, "No." She then saw the two women exit the courthouse and stand on the steps. According to Kelly, it looked as if the woman was "talking into thin air." The women then came back inside and disappeared. A short time later, the two women came back to the bulletin board. One of them said, "Excuse me, ma'am, but we have to bother you again." The woman then unlocked the case and took down the notice about the Sillers' property that Kelly had been reading. The woman said, "Well, that sale is over." The woman then locked the case and said to Kelly, "Have a good day."

The Sillers argue that there was evidence that the notice was not posted for the required twenty-one days before the sale, pointing to their own testimony. Abel Siller testified that he went to the courthouse "several days" before the foreclosure sale and on the day of the foreclosure sale at 8:00 a.m. He testified that on both occasions he "did not see any notice." Similarly, Santiago Siller testified that he went to the courthouse on the day of the foreclosure sale at around 9:00 a.m., looked at the bulletin board, and "didn't see anything." Mario Siller also testified that four days before the foreclosure sale, he went to the courthouse bulletin board and "didn't see anything." However, whether the notice was actually visible when the Sillers went to the courthouse was not the issue. If a notice of foreclosure sale is "actually posted the required number of days prior to the sale, it is not essential that [it] remain[s] intact and visible during every one of the intervening days." *Keilman*, 851 S.W.2d at 923 (quoting *Chambers v. Lee*, 566 S.W.2d 69, 73 (Tex. Civ. App.—Texarkana 1978, no writ)). The issue is whether the notice was posted the required number of days, and the undisputed evidence shows that it was.[4]

---

[4] We note that the Sillers complain that the trustee deed, as prepared by Martinez, recites that the notice of foreclosure sale was posted in Cherokee County, Texas, not La Salle County, Texas. However, Martinez testified that the reference to Cherokee County was a "typo" and that she has "never even conducted business in Cherokee County." Martinez confirmed that the notice was posted in La Salle County, not Cherokee County. *See Gevinson v.*

**CONCLUSION**

Because the trial court did not abuse its discretion in applying the doctrine of judicial estoppel and because there was no evidence to support the finding that the notice of foreclosure had not been posted twenty-one days before the foreclosure sale, we affirm the judgment of the trial court.[5]

Karen Angelini, Justice

---

*Manhattan Construction Co.*, 449 S.W.2d 458, 466 (Tex. 1969) (explaining that while "[i]t has been said that one who introduces a document vouches for its accuracy and will not be allowed to impeach or contradict its recitals," this rule "has largely been engulfed by its own exceptions," and a party may "disprove factual recitals in a document introduced by him").

[5] Having so held, we need not address LLP Mortgage's cross-issues.