IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35081-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TISHAWN MARQUEIS WINBORNE, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — What does the law require when a juror, during jury deliberations, recalls that he witnessed some of the events forming the charges against the accused? Tishawn Winborne challenges his two convictions for attempting to elude a police officer on the ground that the trial court failed to remove the juror and seat an alternate. Winborne also claims error to the trial court's allowance of police officers to use the words "reckless" and "eluding" in their testimony. We accept Winborne's assignments of error and remand for a new trial.

FACTS

This prosecution arises from Tishawn Winborne's defying of traffic stops and fleeing the presence of law enforcement officer patrol cars on adjoining days. On Friday, August 5, 2016, Spokane Police Officer Juan Rodriguez learned of Winborne while

investigating a crime unrelated to charges brought against Winborne. On August 5, Officer Rodriguez viewed surveillance footage from a Motel 6 parking lot, which footage showed a male loading boxes into a red Mercury. The motel clerk identified the male as Winborne.

When Officer Juan Rodriguez later left the Motel 6, he glimpsed Tishawn Winborne standing in the motel parking lot. A suspicious Rodriguez trailed Winborne momentarily before Winborne entered the Mercury, which car Rodriguez recognized from the surveillance footage. A records search of the Mercury's license plate number identified the vehicle as stolen. Rodriguez called for assistance and followed Winborne, in an undercover car, as Winborne drove the Mercury. A chase ensued.

At 10:30 a.m., on August 5, Tishawn Winborne sped through Spokane residential streets at forty miles per hour with Police Officer Juan Rodriguez tailing him. Winborne did not stop at one stop sign. Spokane Police Officer Daniel Cole responded to Officer Rodriguez's request for assistance, pulled his marked squad car behind Winborne's Mercury, and activated his emergency lights, which activity provoked Winborne to accelerate. Rodriguez ended his pursuit.

Tishawn Winborne drove hastily westbound on Frederick Street and crossed a controlled intersection with Monroe Street without stopping but traveling at thirty miles per hour. Officer Cole continued in pursuit a block and a half behind Winborne. After crossing Monroe Street, Winborne reached forty-five miles per hour with a posted limit

2

of twenty-five miles per hour.  A block and a quarter after Monroe Street, Officer Cole ceased his pursuit because Winborne did not slow and in the interest of public safety. Winborne turned southbound at a "T" intersection, and Cole thereafter lost sight of the Mercury.

Later on August 5, Spokane Police Sergeant Kurt Vigesaa discovered the Mercury parked near the intersection of Hemlock and York Streets.  Sergeant Vigesaa attached a global positioning system device to the automobile, and, on Sunday, August 6, Vigesaa saw from his computer that the Mercury had journeyed to the town of Wellpinit, forty-four miles northwest of Spokane.  When the Mercury commenced its return trip to Spokane on August 6, Sergeant Vigesaa positioned his squad car to intercept the car along Nine Mile Road north of Spokane.

As Sergeant Kurt Vigesaa reposed in his Dodge Charger patrol car, he espied Tishawn Winborne driving the Mercury pass Vigessa.  Sergeant Vigesaa activated his emergency lights, which prompted Winborne to accelerate the Mercury to seventy miles per hour despite Nine Mile Road's limit of fifty-miles per hour.  Vigesaa, while traveling at seventy-eight miles per hour, deployed a Star Chase device, which attached to the rear of the Mercury.

Sergeant Kurt Vigesaa retreated and monitored the Mercury's movement from his squad car computer.  The Mercury traveled wildly for thirteen minutes across Spokane, while Vigesaa observed the car speeding past other cars and weaving through a medium

3

flow of traffic. The Star Chase system recorded the Mercury traveling as fast as ninety-eight miles per hour. The Mercury traveled on Spokane's busy Francis Street at eighty-four miles per hour without any officer in immediate pursuit. Winborne continued to wind through a succession of side streets with twenty-five and thirty mile per hour speed limits, while traveling around sixty miles per hour.

During Tishawn Winborne's hurried drive from west to east across Spokane, he temporarily drove south in the northbound lane of a street. He corrected onto the right side of the road, but then returned to driving in England and nearly struck an intercepting patrol car. At the last second, he corrected his lane of travel and narrowly avoided striking the police car.

Tishawn Winborne eventually parked his automobile on North Crestline Street. Sergeant Kurt Vigesaa, with aid from dispatch, located the Mercury and witnessed Winborne exit the vehicle. Vigesaa identified himself as a law enforcement officer and directed Winborne to stop. Winborne saw Vigesaa in his police garb and fled. Winborne ran upstairs, followed by Sergeant Vigesaa. Vigesaa again identified himself as a police officer and ordered Winborne to stop. Winborne turned to run before being detained, after a physical struggle, with Vigesaa and other officers.

Spokane Police Officer Stephanie Kennedy asked Tishawn Winborne, after his arrest, about stealing the car. Winborne responded: "it doesn't matter; she knows better than to press charges." Report of Proceedings (RP) at 338. When questioned about the

4

pursuit, he replied:

> You guys just couldn't catch up. Who drives the Charger? He's slow. I should have taken that—I should have—I should take that thing and teach him how to drive.

RP at 339.

## PROCEDURE

The State of Washington charged Tishawn Winborne with theft of a motor vehicle, two counts of attempting to elude a police vehicle, one count of second degree assault, and one count of third degree assault. The assault charges arise from his resisting of police officers.

At the start of trial, Tishawn Winborne moved in limine to preclude the State's witnesses from testifying regarding ultimate factual issues such as whether Winborne "eluded" or drove "recklessly." The trial court denied the motion.

At the beginning of voir dire, the court inquired of the jury panel as a whole:

> The second set of questions have to do with your qualifications to sit on a jury in this—or as a juror in this case. Has anyone here heard anything about this case before? Anyone express to you an opinion concerning this case? Do you know either the defendant or any of the lawyers on either side?

RP at 83. No juror answered that he or she knew the defendant or had heard any information about the prosecution. Neither the court nor counsel directly asked jury veniremen and venirewomen as to whether they witnessed any of the fast driving of Tishawn Winborne or of the police pursuit of Winborne.

5

During trial, State witnesses repeatedly testified to Tishawn Winborne's driving "recklessly" or "eluding" law enforcement. One officer testified, "[o]bviously he [Winborne] was eluding me." RP at 252. At the close of the State's case, the trial court dismissed the theft of a motor vehicle charge because of insufficient evidence. Winborne did not testify on his behalf.

During summation, defense counsel argued that Tishawn Winborne, on August 5, did not drive as fast as to what Officers Juan Rodriguez and Daniel Cole testified. Counsel argued that Officer Cole, with emergency lights flashing, only pursued Winborne for one and one-half blocks. According to Winborne's counsel, during this short distance, Winborne would not necessarily know that the officer sought to stop him, particularly since Winborne drove one and a quarter block forward of Cole. Based on these assumed facts, counsel claimed his client did not willfully refuse to stop on August 5. Defense counsel also argued to the jury that Tishawn Winborne did not drive recklessly on August 5.

During deliberations, the trial court received a note from the jury, which read:

> A juror now realizes he was witness to some of the events of August 5th. Does this disqualify him?

Clerk's Papers (CP) at 146. We hereafter refer to the juror who witnessed events as "juror W."

August 5, the date noted in the juror message, was the day of the first pursuit. As

6

a result of the jury message, Tishawn Winborne expressed concern regarding the one juror's ability to separate personal observations from evidence presented during trial. Winborne moved for the juror to be excused and an alternate seated. In the alternative, Winborne asked the court to remind the jury that it must base its decision only on evidence heard during trial. The State suggested that the trial court respond to the juror question by questioning the juror about what he witnessed. The trial court denied Winborne's motion to dismiss the juror and rejected the State's suggestion. The trial court instructed the jury to review each of the jury instructions provided by the court. One such instruction read, in part:

> It is your duty to decide the facts in this case based upon the evidence presented to you during this trial. . . .
> . . . .
> The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, and the exhibits that I have admitted, during the trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.

CP at 119.

The jury found Tishawn Winborne guilty of both counts of attempting to elude a police vehicle, but acquitted Winborne of both assault charges.

## LAW AND ANALYSIS

### Witness as Juror

*Issue 1: Did the trial court err by allowing the juror who witnessed events on August 5 to remain seated on the jury?*

*Answer 1: Yes.*

Tishawn Winborne assigns error to the trial court's failure to excuse juror W, who observed events on August 5. Winborne contends that refusal to unseat the juror violated his due process rights and his constitutional right to an impartial jury. He further asserts that the presence of a factual witness on the jury constitutes one of the rare circumstances in which an appellate court can presume bias, which requires reversal even without a showing of actual prejudice. Winborne adds that, at the least, the trial court should have questioned juror W about his or her ability to continue to serve. Although Winborne does not assert the right to confrontation of witnesses, we note that his challenge of juror W implicates the confrontation clause.

The State responds by contending that simply witnessing events does not render a juror inherently biased. The State insists that the juror hid nothing from the court, did not prejudge the prosecution, and lacked an interest in the outcome. The State further argues that juror W witnessed such a tangential part of the crime that he did not realize his sighting until after completion of evidence. According to the State, in all likelihood, juror W only saw Tishawn Winborne or a police officer drive past. Therefore, the State

contends that Winborne fails to establish an implied bias to support a challenge for cause.

Washington Constitution art. I, § 21 affords an accused the right to a jury of twelve persons. Washington Constitution art. I, § 22 lists additional rights of an accused as including the right "to meet the witnesses against him face to face . . . [and] to have a speedy public trial by an impartial jury." The right to trial by jury requires a trial by an unbiased and unprejudiced jury. *Smith v. Kent*, 11 Wn. App. 439, 443, 523 P.2d 446 (1974). Trial judges carry an obligation to ensure those rights by dismissing unfit jurors during trial. *State v. Berniard*, 182 Wn. App. 106, 117, 327 P.3d 1290 (2014).

A number of statutes and one court rule address removal of potential jurors or jurors. RCW 2.36.110 declares:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

RCW 4.44.170 states:

> Particular causes of challenge are of three kinds:
> (1) For such a bias as when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this code as implied bias.
> (2) For the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this code as actual bias.
> (3) For the existence of a defect in the functions or organs of the body which satisfies the court that the challenged person is incapable of

performing the duties of a juror in the particular action without prejudice to the substantial rights of the party challenging.

RCW 4.44.190 addresses "actual bias:"

A challenge for actual bias may be taken for the cause mentioned in RCW 4.44.170(2). But on the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he or she may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.

RCW 4.44.180 defines "implied bias" as:

A challenge for implied bias may be taken for any or all of the following causes, and not otherwise:
(1) Consanguinity or affinity within the fourth degree to either party.
(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.
(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.
(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

A juror's witness to some of the litigated events implicates actual bias, not implied bias. The juror holds no special relationship to a party that creates implied bias. Instead, the juror presumably begins service in a particular state of mind resulting from having observed events. Because no one questioned juror W whether his recall, during the

course of the trial, of events on August 5 might impact his verdict, the trial court never

resolved whether the juror could disregard any opinion based on his remembrance of his

observations. Therefore, under Washington's statutory scheme, juror W's observation of

a portion of the alleged crime implicates actual, not implied, bias.

Finally, a sentence within CrR 6.5 expresses:

> If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged, and the clerk shall draw the name of an alternate who shall take the juror's place on the jury.

Remarkably no current Washington statute or court rule expressly addresses the

situation when a potential juror witnesses some of the events that form the substance of

the case. Washington previously maintained a statute that read:

> A juror may be examined by either party as a witness, if he be otherwise competent. If he be not so examined, he shall not communicate any private knowledge or information that he may have of the matter in controversy to his fellow jurors, nor be governed by the same in giving his verdict.

BALLINGER'S Code § 5001 (later codified at RCW 5.60.010 and repealed by Laws of

1985, ch. 68, § 1).

We review some general principles of juror qualification before directly

addressing a witness to events as a jury member. A juror may be excused for cause if his

views would prevent or substantially impair the performance of his duties as a juror in

accordance with his or her instructions and his or her oath. *State v. Hughes*, 106 Wn.2d

11

176, 181, 721 P.2d 902 (1986). Granting or denying a challenge for cause lies within the discretion of the trial court and will be reversed only for manifest abuse of discretion. *State v. Rupe*, 108 Wn.2d 734, 748, 743 P.2d 210 (1987).

As already noted, an accused holds a constitutional right to unbiased jurors. The seating of a juror with percipient knowledge of facts comprising the criminal charges compromises this right. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge must ever be watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). The due process clause of the Fourteenth Amendment entitles a state criminal defendant to an impartial jury, which includes a jury that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision. *Patton v. Yount*, 467 U.S. 1025, 1037 n.12, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984). In addition, due process requires the trial judge, if he becomes aware of a possible source of bias, to determine the circumstances, the impact thereof on the juror, and whether or not the accused suffers prejudice. *Remmer v. United States*, 347 U.S. 227, 230, 74 S. Ct. 450, 98 L. Ed. 654 (1954).

In order to better apply the rules, policies and rationales behind the constitutional and statutory right to impartial jurors, we circumscribe the pertinent facts in Tishawn Winborne's appeal. We also ask if a party could have removed juror W for cause if the

12

juror had disclosed being a witness during voir dire. We assume that some testimony during the trial prompted juror W's memory to recall some events occurring on August 5, rather than the juror purposely misleading the court and the parties during voir dire.

The record shows that juror W "was witness to some of the events of August 5." CP at 146. The State writes that the juror simply saw Tishawn Winborne or a police officer drive past. According to the State, the juror witnessed such a tangential part of the crime that he did not even realize being a witness until after the completion of all the evidence. We worry, however, that the juror observed more than a tangential part of the crime.

The first pursuit transpired on Friday, August 5. The parties assume that juror W witnessed the chase but remember that Officer Juan Rodriguez spoke to a Motel 6 clerk about Tishawn Winborne, when Rodriguez investigated an unrelated crime. The clerk identified Winborne. At the beginning of voir dire, the court asked potential jurors of knowledge of Winborne. We assume juror W was not the hotel clerk because he likely would have disclosed on questioning that he knew the defendant. Still, we recognize a remote possibility that juror W could have been the clerk but did not remember Winborne at the time of voir dire.

Juror W more likely saw a segment of the police pursuit on August 5. He saw a speeding Mercury, a patrol car with stimulated emergency lights, or both. We can reasonably conclude that the juror saw the speeding Mercury or the chase for less than

13

three blocks, since the juror probably could not see beyond three blocks. Officer Daniel Cole likely used his emergency lights for less than three blocks. We do not know if juror W then drove or rode inside a car or observed the chase from another perspective. We hold concern that the juror, particularly if driving, may have needed to take steps to avoid being struck by either the Mercury or the patrol car.

At common law, a witness in the case could serve as a juror. *Underwood v. State*, 179 Ala. 9, 60 So. 842, 846 (1912). A juror could even testify as a witness to a mere formal matter not going to the merits of the cause. *Underwood v. State*, 60 So. at 847. In turn, while either party could challenge for cause any juror who was a witness, the trial court committed error if it, on the court's own motion, excused the juror, as the parties might waive the challenge. *Underwood v. State*, 60 So. at 846 (1912).

Under ancient doctrine, jurors rendered their verdict on facts within their personal knowledge in addition to those facts derived from the testimony of witnesses duly sworn. *Schmidt v New York Union Mutual Fire Insurance Co.*, 1 Gray 529, 535, 67 Mass 529 (1854). Early juries comprised witnesses assumed to have independent knowledge of the cases and were expected to use the knowledge in reaching a verdict. 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1800 (James H. Chadbourn rev. ed. 1976) (1940). In the mid-1600s, a new rule emerged that required jurors with personal knowledge of a case to state publicly in court on oath any such information and not to give the information in private to his companions. 6 JOHN HENRY WIGMORE, EVIDENCE

IN TRIALS AT COMMON LAW § 1800 (James H. Chadbourn rev. ed. 1976). By the 1700s, a well-settled principle of law required jurors with personal knowledge of a case to inform the court and to be sworn as witnesses. 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1800 (James H. Chadbourn rev. ed. 1976). They could still serve as jurors, however. 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1800 (James H. Chadbourn rev. ed. 1976). For perhaps the first time in 1865, an American court ruled that a witness with material testimony ought not to be seated as a juror. *Howser v. Commonwealth*, 51 Pa. 332, 337 (1865).

The practice of taking jurors from the vicinage came from the notion that they might be better qualified from their personal acquaintance with the facts to decide the cases brought before them. *Schmidt v New York Union Mutual Fire Insurance Co.*, 1 Gray at 535 (1854). For example, one who saw Tishawn Winborne's driving on August 5 or August 6 may be better positioned to adjudge whether Winborne eluded law enforcement and drove his Mercury recklessly. The Arizona Supreme Court lucidly rejected this argument in *State v. Thornton*, 187 Ariz. 325, 929 P.2d 676 (1996).

> In our view, the [Arizona] statute was designed to prevent persons with personal knowledge of a crime from sitting in judgment of the accused. These persons are excluded because they are likely to determine disputed facts in ways consistent with what they saw or heard, rather than what they see and hear in court. "It would make each juror the absolute judge of the accuracy and value of his own knowledge." *Washburn v. Milwaukee & L.W.R. Co.*, 59 Wis. 364, 18 N.W. 328, 331 (1884). There is an additional risk that a juror with personal knowledge of a case will disclose facts to the other jurors in private, depriving the parties of cross-examination. These

15

concerns have been present since the seventeenth century and remain valid today.

*State v. Thornton*, 929 P.2d at 681.

The modern rules as to qualifications of jurors clash with the old rules. L.S. Tellier, Annotation, *Juror's Previous Knowledge of Facts of Civil Case as Disqualification*, 73 A.L.R.2d 1312 (1960). Today, with the verdict depending wholly on the evidence presented by the witnesses, previous knowledge of facts in the case may disqualify the juror, particularly if that knowledge left him or her so opinionated that doubt lies as to whether he or she can render a fair verdict solely on the facts as presented by the evidence. L.S. Tellier, Annotation, *Juror's Previous Knowledge of Facts of Civil Case as Disqualification*, 73 A.L.R.2d 1312 (1960)

The prevailing view still may be that the mere fact that one is a witness will not of itself disqualify him as a juror. *Hall v. State*, 64 Ga. App. 644, 13 S.E.2d 868 (1941). 47 Am. Jur. 2d *Jury* § 239 (2017) declares:

> A prospective juror is not disqualified merely because of previous knowledge of the facts of a case. However, jurors who have such personal knowledge of material facts as will tend to bias their opinion are regarded as incompetent to sit as jurors even though they may feel that they can render an impartial verdict.
> Knowledge on the part of a juror of incidental or collateral facts, or facts about which there is no controversy, will not render him incompetent to sit in the trial of a case. A prospective juror need not be totally ignorant of the facts and issues involved, so long as the juror can lay aside the juror's impression or opinion and render a verdict based on the evidence presented in court.

(Footnotes omitted.)  If we followed the prevailing view, we would need to determine if Tishawn Winborne's juror could ignore his observations on August 5 and render a verdict only on the evidence presented in court.

We deem *State v. Stentz*, 30 Wash. 134, 70 P. 241 (1902), *abrogated on other grounds by State v. Fire*, 145 Wn.2d 542, 34 P.3d 1218 (2001), controlling despite its age.  By 1902, Washington State had entered the modern era of juror bias law.  The State of Washington charged Frank Stentz with manslaughter.  Stentz drove a team of horses over the person of M.W. Orton, who died from his injuries.  The State argued that Stentz drove the team in a manner likely to endanger the lives of others.  The manslaughter charge put at issue whether Stentz drove the team of horses wantonly, negligently, recklessly, and willfully.

In the Frank Stentz prosecution, the State of Washington listed R.M. Sperry on its list of witnesses.  Coincidentally R.M. Sperry also appeared for jury duty.  On questioning, Sperry testified that he knew Stentz, but had formed no opinion as to his innocence or guilt.  He insisted he would give Stentz a fair trial.  Frank Stentz requested that the trial court remove Sperry for cause from the jury.  The trial court told the State that he would remove Sperry for cause only if the State intended to call Sperry to testify.  The State responded that it would call Sperry to testify only if Sperry did not serve on the jury.  The trial court denied the motion to remove.  Stentz exercised his last preemptory challenge to remove Sperry.

Because R.M. Sperry never sat on the jury, the State called him to testify.  Sperry testified that Frank Stentz and companions in the wagon drawn by horses passed him two miles before the scene of the death.  According to Sperry, the men acted jolly and hallooed and yelled at him.  Sperry testified that Stentz drove fast and increased the speed of the horses when approaching him.  The State presented testimony that the men had imbibed alcohol and that Stentz drove the team of horses too fast for conditions.  Stentz lost control of the horses, who then ran over a bicycling M.W. Orton.

The Washington Supreme Court reversed the conviction of Frank Stentz, since Stentz needed to use a preemptory challenge to a juror who held knowledge of incriminating facts that bore on the essence of the offense.  Sperry knew of the reckless driving of Stentz on a public way a short distance before the offense.  The prospective juror knew controverted facts that would from necessity bias and influence his judgment as a juror.

The Supreme Court, in *State v. Stentz*, noted that a party may challenge a juror for actual bias.  The law defines "actual bias" as:

> the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the trier, in the exercise of a sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging.

*State v. Stentz*, 30 Wash. at 141 (quoting BALLINGER'S CODE § 4983).  The current RCW 4.44.170 echoes this definition.  Under this definition, according to the Supreme Court,

18

the trial court abused its discretion when denying removal of R.M. Sperry from the jury panel. The discretion of the trial court to determine partiality or impartiality in a jury is subject to review by the appellate court under the constitutional guaranty to the accused of a trial by an impartial jury.

The Supreme Court, in *State v. Stentz*, declared that the jury must decide the case only on the evidence before it. Under the constitutional provisions defining the rights of accused persons, Frank Stentz had the right, not only to be tried by an impartial jury, but to meet the witnesses against him face to face. Thus, the Supreme Court also noted a violation of the confrontation clause. The court wrote:

> This means that the examination of such a witness shall be in open court, in the presence of the accused, with the right of the accused to cross-examine such witness as to facts testified to by him - not that the witness may carry into the jury room, in the recesses of his own mind, knowledge of material, controverted facts which of necessity must bias his judgment.

*State v. Stentz*, 30 Wash. at 142. The court stated that such a juror should be removed even if he declares that he will not allow his knowledge to influence him but will reach a verdict solely on the evidence presented during trial. The court reasoned that such a juror is not an impartial one, notwithstanding he says he is.

*State v. Stentz* possesses the remarkable similarity to Tishawn Winborne's appeal in that the Frank Stenz's juror likely saw Stentz drive recklessly before the homicidal accident. Winborne's juror W presumably saw Winborne drive at a high speed at the

same location and during the same time for which the State charges Winborne with felony eluding, a crime that requires proof of reckless driving.

In our appendix, we discuss two Texas decisions, *Wyle v. State*, 777 S.W.2d 709 (Tex. Crim. App. 1989) and *Siller v. LPP Mortgage, Ltd.*, 264 S.W.3d 324 (Tex. App. 2008). In each case, the reviewing court reversed a verdict on the basis that one party suffered a constitutional breach because of a juror or potential juror having percipient knowledge of the events that formed the basis of the prosecution of a civil dispute. Texas maintained a statute that precluded a witness from jury service.

We contrast *Wyle v. State*, *Siller v. LPP Mortgage, Ltd.*, and *State v. Stentz* with *State v. Thornton*, 187 Ariz. 325 (1996). The Grand Canyon State charged Floyd Thornton with two counts of first degree murder and a host of other crimes, including escape from a prison where authorities housed him after the first murder, but before the second murder. Potential juror Charlotte Nucci listened to Thornton's escape and capture on a scanner set on a police frequency. Nucci heard of the death of the second victim and police claiming the culprit to be Thornton. She heard the details of the capture of Thornton as relayed to a dispatcher. An Arizona statute directed the trial court to disqualify as a juror any "witness in the action." ARIZ. REV. STAT. § 21-211(1). The trial court found that Nucci could be a fair and impartial juror and denied Thornton's challenge for cause. The Arizona Supreme Court construed the statute to exclude as a juror not only one who testifies in the case but those who witnessed the crime. The court

20

then needed to determine if Charlotte Nucci witnessed any of the charged crimes when listening on the scanner.

The Arizona court, in *State v. Thornton*, held Nucci not to be a witness within the meaning of the statute. In so ruling, the court applied the following rules. A witness to the offense should be limited to persons with personal knowledge of a material, disputed aspect of the case. Moreover, disqualification under the statute only comes with persons who have knowledge that is unique to the case. Mere general knowledge, such as familiarity with the geographic location at which an event occurred, will normally not result in mandatory disqualification. The reviewing court reviewed the trial record and concluded that Nucci listened to only facts that Thornton never disputed.

*Hawkins v. State*, 278 S.W.3d 396 (Tex. App. 2008) follows *State v. Thornton*, 187 Ariz. 325 (1996) in chronology and spirit. Texas prosecuted Nathaniel Hawkins for sexual assault. During the testimony, a juror disclosed that he had learned from the testimony that law enforcement recovered a hammer and mask from his backyard. He added that police had never informed him of the fact and he learned of the fact for the first time during an officer's testimony. The trial court denied Hawkins' motion for a mistrial primarily on the basis that the juror never saw the tool and mask in his yard. Thus, the juror was not a witness. The appellate court affirmed.

Tishawn Winborne's juror W held percipient knowledge of the events, about which the State prosecuted him. Winborne challenged the speed at which law

21

enforcement officers testified he traveled, and he denied that he drove recklessly. Whether the accused drove "recklessly" is an element of attempting to elude a police vehicle. RCW 46.61.024(1). Thus, Winborne's juror had knowledge relating to disputed facts. The State asserts that Winborne drove recklessly at the very time and place that the juror probably saw Winborne.

We note that, unlike the Washington Supreme Court in *State v. Stentz*, we do not know the entirety or specifics of Tishawn Winborne's juror W's observations. Nevertheless, this uncertainty in the reviewing court shows the need to have, at the very least, questioned juror W before allowing him to continue to serve and to ensure that juror W did not share his knowledge with other jurors. We repeat that the State alleges that Winborne drove recklessly at the very time and place that the juror probably saw Winborne operating his Mercury.

We reiterate two statements from the United States Supreme Court. A trial judge must ever be watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. *Smith v. Phillips*, 455 U.S. 209 (1982). Due process requires the trial judge, if he becomes aware of a possible source of bias, to determine the circumstances, the impact thereof on the juror, and whether or not the accused suffers prejudice. *Remmer v. United States*, 347 U.S. at 230 (1954).

The State astutely requested that the trial court question the juror after receipt of the jury note. The State also concedes on appeal that the trial court should have questioned the juror.

The Arizona Supreme Court cautioned in *State v. Thornton*:

> Trial judges must be particularly careful when a juror is challenged as a witness. If the information Nucci obtained had been material and disputed, *State v. Huerta*, 175 Ariz. 262, 855 P.2d 776 (1993), would have required a reversal even though Nucci did not serve as a juror. If confronted with a challenge for cause in which the facts do not clearly establish whether a prospective juror should be removed, the better practice will be to resolve doubt in favor of disqualification.

*State v. Thornton*, 187 Ariz. 325, 929 P.2d 676, 681 (1996).

*Issue 2: Whether the trial court committed harmful error?*

*Answer 2: Yes, but more importantly the error constituted structural error that is not subject to a harmless error analysis.*

Tishawn Winborne asserts that juror W's role as a witness and the trial court's refusal to remove juror W constitutes structural error that belies any need to analyze harmless error. The State contends that the trial court's failure to question the juror formed only harmless error. The State asserts that the jury verdicts, acquitting Winborne of some of the charges, establish beyond a reasonable doubt an absence of jury prejudice. The testimony of Officer Juan Rodriguez, Officer Daniel Cole, and Sergeant Kurt Vigesaa, according to the State, established beyond a reasonable doubt that Tishawn Winborne twice eluded police vehicles. Since overwhelming evidence existed to convict

23

on the two counts of eluding, but only a modicum of evidence to convict on the assault

charges which resulted in acquittals, the jury, according to the State, showed itself

unbiased.

We find no decision that directly addresses whether a witness to the alleged

criminal behavior being seated on the jury produces structural error. Nevertheless, based

on principles arising from other decisions and based on the Washington decision of *State*

*v. Stentz*, 30 Wash. 134 (1902), we hold that this circumstance establishes structural error

that annuls the need for any harmless error analysis.

Under Washington principles, when the defendant shows potential bias, we engage

in a harmless error analysis. *State v. Slert*, 186 Wn.2d 869, 876-77, 383 P.3d 466 (2016).

Typically, to obtain a new trial for juror bias for undisclosed information in voir dire, a

party must show: (1) the juror intentionally failed to answer a material question and (2) a

truthful disclosure would have provided a valid basis for a challenge for cause. *State v.*

*Boiko*, 138 Wn. App. 256, 261, 156 P.3d 934 (2007). We decline to follow these rules

because no court has applied the rules to an instance of a juror being a percipient witness.

We have previously concluded that juror W held actual, not potential, bias.

Some fundamental constitutional errors so intrinsically harm the accused as to

require automatic reversal. *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 144 L.

Ed. 2d 35 (1999); *State v. Coristine*, 177 Wn.2d 370, 380, 300 P.3d 400 (2013). The law

labels such errors as "structural errors." Constitutional principles deem an error

"structural" when the mistake "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). A structural error prevents a criminal trial from reliably serving its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair. *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986). For this reason, structural errors are not subject to harmless error analysis. *In re Personal Restraint of Sanchez*, 197 Wn. App. 686, 699, 391 P.3d 517, *review denied*, 189 Wn.2d 1023, 408 P.3d 1089 (2017). A structural error "resists" a harmless error analysis because "it taints the entire proceeding." *State v. Levy*, 156 Wn.2d 709, 725, 132 P.3d 1076 (2006). Some errors impact the very trial process itself such that any effort to assess the impact of such errors on the outcome of the proceeding would be nothing more than rank speculation. *Williams v. Netherland*, 181 F. Supp. 2d 604, 617 (E.D. Va. 2002), *aff'd sub nom. Williams v. True*, 39 F. App'x. 830 (4th Cir. 2002).

The United States Supreme Court has listed some examples of structural error. The exemplars include the absence of counsel for a criminal defendant, a prejudiced judge, an unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and admission of a defendant's coerced statements or confessions. *Arizona v. Fulminante*, 499 U.S. 279 (1991).

25

We focus on the Supreme Court's example of a biased judge, because a biased juror causes the same mischief. In each instance, the trier of fact may render a decision based on factors outside the presentation of evidence during the trial or based on considerations not subject to cross-examination. The United States Supreme Court has stated structural error includes error that denies a defendant his "'right to an impartial adjudicator, be it judge or jury.'" *Gomez v. United States*, 490 U.S. 858, 876, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989), (quoting *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S. Ct. 2045, 95 L. Ed. 2d 622 (1987)). Because the impartiality of the adjudicator goes to the very integrity of the legal system, harmless error analysis cannot apply. *Gray v. Mississippi*, 481 U.S. at 668. In other contexts, foreign courts have declared structural error when the accused encountered actual or implied juror bias. *Commonwealth v. Hampton*, 457 Mass. 152, 163, 928 N.E.2d 917 (2010).

Justice O'Connor, in a concurring opinion, wrote:

> The right to a trial by an impartial jury lies at the very heart of due process. "[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose-to provide a fair and reliable determination of guilt." That purpose simply cannot be achieved if the jury's deliberations are tainted by bias or prejudice. Fairness and reliability are assured only if the verdict is based on calm, reasoned evaluation of the evidence presented at trial. Thus, time and time again, in a broad variety of contexts, the Court has adopted strong measures to protect the right to trial by an impartial jury.

*Smith v. Phillips*, 455 U.S. at 224-25 (1982) (O'Connor, J., concurring) (internal citations omitted).

Under Washington case law, a determination of actual juror bias cannot be harmless. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015). Doubts regarding bias must be resolved against the juror. *State v. Cho*, 108 Wn. App. 315, 330, 30 P.3d 496 (2001).

In *Williams v. Netherland*, 181 F. Supp. 2d at 617, a lower federal court, under differing circumstances, held that a biased jury constituted structural error. The court reasoned that logic dictated that a biased juror be treated the same way as a partial judge. The court further remarked that the constitutional right to an impartial jury to decide the accused's fate would be an empty promise if an appellate court could decide after the fact that, although bias resided in the jury, the bias made no difference in the ultimate decision to convict. Such a conclusion would spawn sheer speculation. The presence of a biased juror infects and pervades the entire trial proceedings and influences the jury's deliberations from start to finish.

Even if we employed harmless error analysis, we would still reverse Tishawn Winborne's convictions. As already ruled, the trial court committed constitutional error. A constitutional error is harmless if the appellate court is assured beyond a reasonable doubt that the jury verdict is unattributable to the error. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011).

We do not consider juror W's observations of August 5 harmless. We emphasize for the third time that the juror observed Winborne at a time that Winborne drove his car fast and at a time that the State alleges he drove recklessly. We agree with the State that it presented undisputed evidence that Winborne sped. But speeding and evading a police officer does not necessarily convict an accused of felony eluding a police officer. The State must still prove reckless driving and knowingly failing to stop after signaled by an officer. RCW 46.61.024(1). Winborne disputes both.

We do not know what juror W saw. The trial court could have, but did not, question the juror on receiving the jury note to determine the extent of juror W's observations. Juror W could have observed Tishawn Winborne speeding and driving erratically. The juror may have needed to evade the Mercury to escape injury. We also do not know what juror W told fellow jurors. Therefore, we lack answers to key concerns behind the law's declaring a juror with percipient knowledge to create structural error.

We recognize the possibility of remanding to the trial court to conduct an evidentiary hearing to determine the impact of juror W's personal knowledge on the jury verdict. The usual remedy for allegations of juror partiality is a hearing, during which the defendant has the opportunity to prove actual bias. *Smith v. Phillips*, 455 U.S. at 215 (1982). *Smith* approved a trial court's hearing to allow testimony from a juror about his bias, but the lower court found no bias by the fact that the juror had applied for

28

employment as an investigator with the district attorney's office. *Remmer v. United States*, 347 U.S. 227 (1954), approved of a hearing to determine whether an FBI investigation of a juror in the midst of the trial harmed the defendant. Nevertheless, in each of these United States Supreme Court decisions, a question arose as to whether a juror held actual bias. We have no such question in Tishawn Winborne's appeal.

In *State v. Cho*, 108 Wn. App. at 327 (2001), juror eight failed to disclose that he was a former police officer. The court held concern about implied bias but did not automatically reverse the conviction. Instead, the court remanded for an evidentiary hearing in which the parties might present additional testimony to illuminate the juror's answer on a verdict and comments he made to defense counsel after the verdict. The *Cho* court did not indicate whether the trial court could summon the juror for questioning of his past employment and the impact of that employment on his verdict.

Any remand of Tishawn Winborne's prosecution would entail summoning at least juror W to testify. The trial court might also wish to summon other jurors to determine if juror W shared his percipient observations with the jury as a whole or with individual jurors. In turn, questioning the jurors may impinge on the privacy of jury deliberations.

None of the decisions involving a remand entail a witness of events seated as a juror. We deem *State v. Stentz*, 30 Wash. 134 (1902) and *Wyle v. State*, 777 S.W.2d 709 (Tex. Crim. App. 1989) more enlightening. In each case, the reviewing court reversed the conviction. We question the ability to now determine the efficacy of inquiring of

Tishawn Winborne's juror W's state of mind. *Stentz* warned of a juror, who witnessed events, declaring a lack of bias when his knowledge necessarily assails his impartiality. Case law cautions against any witness serving as a juror in a criminal case. Winborne deserves any doubt be resolved in his favor.

Our dissenting sister elects to discount *State v. Stentz* because of the decision's 1902 date and due to changes in methods of communication during the last century. We deem *Stentz* still controlling. This appellate court remains bound by a decision of the Washington Supreme Court. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997); *State v. Gore*, 101 Wn.2d 481, 486-87, 681 P.2d 227 (1984). An intermediate appellate court does not have the option of disregarding a higher state court's decision that has not been overruled, no matter how old the precedent may be. *Johns Hopkins Hospital v. Correia,* 174 Md. App. 359, 382, 921 A.2d 837 (2007), *aff'd*, 405 Md. 590, 954 A.2d 1073 (2008); *Haun v. Guaranty Security Insurance Co.*, 61 Tenn. App. 137, 158, 453 S.W.2d 84 (1969); *Dobbins v. Hardister*, 242 Cal. App. 2d 787, 792-93, 51 Cal. Rptr. 866 (1966). In *State v. South Central Bell Telephone Co.*, 619 So. 2d 749, 753 (La. Ct. App. 1993), the intermediate appellate court of Louisiana recognized the need to follow the ruling in a 94-year-old case.

The dissent also distinguishes *State v. Stentz* on the basis that we do not know the full extent to which juror W saw the driving of Tishawn Winborne. The dissent presumably determines that the trial court may sustain the verdict if juror W, when

questioned on remand, discloses that he saw little of the events or his observations did not influence his verdict. The teaching of *Stentz* conflicts with this determination of our dissenting sister. To repeat, the *Stentz* court stated that such a juror should be removed even if he declares that he will not allow his knowledge to influence him but will reach a verdict solely on the evidence presented during trial. The court reasoned that such a juror is not an impartial one, even though he says he is.

Juror W, in Tishawn Winborne's trial, viewed only the events of August 5. Neither party discusses the ramifications of juror W's participation in determining guilt for the events of August 6, which he did not witness. Perhaps the parties assume that, if we must reverse the conviction for felony eluding conviction for August 5, we must also reverse for the conviction of the same crime on August 6. Without any briefing on the question, we so conclude. If juror W based his vote to convict on the first count of felony eluding in part on his observations of August 5, those observations could impact his vote on the August 6 charge. The juror could reasonably conclude based on his personal observations that, if Winborne drove recklessly while being chased by law enforcement officer on August 5, he also drove recklessly on August 6.

## Opinion Testimony

Tishawn Winborne next challenges the trial court's denial of his motion in limine to prohibit any witness from testifying that Winborne drove "recklessly" or "eluded" police. Police officers repeatedly testified that Winborne "eluded" officers or drove

31

"recklessly." Since this issue may arise on retrial, we address the assignment of error. Because we remand for a new trial on other grounds, we need not address whether Winborne suffered any prejudice.

The State claims that the trial court did not deny Tishawn Winborne's motion in limine, but rather, reserved its ruling for trial. The State contends that, since Winborne did not object to any testimony covered by the motion during trial, Winborne did not preserve any evidentiary error. We agree that the trial court initially reserved its ruling. Nevertheless, the court later denied Winborne's motion before testimony began. Winborne did not need to object again during the testimony.

No witness, lay or expert, may testify to his or her opinion as to the guilt of a defendant, whether by direct statement or inference. *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987); *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993). The State, however, may present testimony that does not directly comment on the defendant's guilt or if otherwise helpful to the jury and based on inferences from the evidence. *City of Seattle v. Heatley*, 70 Wn. App. at 578. Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. ER 704.

Whether testimony provides an improper opinion turns on the circumstances of the case, including (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the

trier of fact. *State v. Hudson*, 150 Wn. App. 646, 653, 208 P.3d 1236 (2009). Testimony

in Tishawn Winborne's trial came from police officers. A law enforcement officer's

improper opinion testimony may be particularly prejudicial because it carries "'a special

aura of reliability.'" *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009) (quoting

*State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007)). A trial court's decision to

admit evidence is reviewed for an abuse of discretion. *State v. Griswold*, 98 Wn. App.

817, 823, 991 P.2d 657 (2000), *abrogated on other grounds by sub nom. State v.

DeVincentis*, 150 Wn.2d 11, 74 P.3d 119 (2003).

We deem *State v. Farr-Lenzini*, 93 Wn. App. 453, 970 P.2d 313 (1999)

controlling. Lisa Farr-Lenzini appealed a criminal conviction for attempting to elude.

This court reversed because the officer's opinion testimony as to Farr-Lenzini's state of

mind constituted harmful error. A state trooper testified he followed Farr-Lenzini's

vehicle with siren and overhead lights on, while she drove at speeds up to one hundred

miles per hour. In response to a question asking him for his opinion as to what

defendant's driving exhibited to him, the trooper testified "'it exhibited to me that the

person driving that vehicle was attempting to get away from me and knew I was back

there and refusing to stop.'" *State v. Farr-Lenzini*, 93 Wn. App. at 458. Farr-Lenzini

testified she did not realize the trooper followed her and she pulled over as soon as she

saw him.

This court, in *State v. Farr-Lenzini*, held the trooper's opinion, either as an expert

or as a lay person, unhelpful to the jury. We reasoned that a lay jury holds the capability to decide whether a driver attempted to elude by relying on its common experience and without the aid of an expert. This court further held the officer's testimony improper because the remarks commented on Farr-Lenzini's guilt since the officer's opinion or impression addressed the major contested question for the jury—whether Farr-Lenzini eluded the officer.

The state trooper in *State v. Farr-Lenzini* did not employ the word "reckless" in his testimony as did officers in Tishawn Winborne's trial. Nevertheless, the same reasoning behind excluding the testimony applies. An officer can testify to his observations of the driving of the defendant without drawing conclusions assigned to the jury. Also, in civil suits, courts have precluded witnesses from testifying that one of the parties to a highway accident drove "recklessly." *Guedon v. Rooney*, 160 Or. 621, 87 P.2d 209, 216 (1939); *Newman v. Stocker*, 161 Md. 552, 157 A. 761, 762 (1932); *Jackson v. Vaughn*, 204 Ala. 543, 86 So. 469, 470 (1920). *Guedon v. Rooney* concerned the testimony of a law enforcement officer.

The trial court abused its discretion by denying Tishawn Winborne's motion in limine. Whether Tishawn Winborne drove "recklessly" or "eluded" the officer is an element of attempting to elude a police vehicle. RCW 46.61.024(1). The State's witnesses testified by direct statements to Tishawn Winborne's guilt.

No. 35081-9-III
*State v. Winborne*

CONCLUSION

We reverse Tishawn Winborne's convictions for felony eluding a police officer

and remand for a new trial consistent with this opinion.

_____
Fearing, J.

I CONCUR:

Lawrence-Berrey, C.J.

35

APPENDIX

In *Wyle v. State*, 777 S.W.2d 709 (Tex. Crim. App. 1989), the state of Texas

charged James Wyle with capital murder. The reviewing court reversed a conviction

because the trial court refused to remove a witness named Shotwell from the jury pool.

Shotwell owned the only funeral home in the county. Shotwell testified at a venue

hearing that he handled the funeral services for the alleged victim of the homicide.

During the trial's voir dire, Shotwell testified that the sheriff's office called him to the gas

station, the scene of the purported crime, where he removed the body. He remained

inside the gas station building for two hours and spoke to officers during his visit.

Shotwell observed blood on the floor. Despite this background, Shotwell averred that he

could be a fair juror that he would accord Wyle a presumption of innocence, and he

would reach a verdict on the evidence presented at trial. When the trial court refused to

remove Shotwell for cause, Wyle exercised a preemptory challenge to remove him.

During the State's case, it called Shotwell to testify of collecting the body and

transporting the corpus to the medical examiner's office.

Texas maintained a statute that allowed either party to challenge a juror for cause

if the person was a witness in the case. The trial court, in *Wyle v. State*, apparently

deemed the statute to apply only if the juror testified at trial and the court assumed the

State would not call Shotwell as a witness if Shotwell served as a juror. The Court of

Appeals disagreed with this reading of the statute. The court extended the coverage of the statute to anyone who saw the commission of the offense or its incidents. The court reversed because Wyle could not otherwise use all of the preemptory challenges to which he was entitled.

*Siller v. LPP Mortgage, Ltd.*, 264 S.W.3d 324 (Tex. App. 2008), like Tishawn Winborne's appeal, concerns a juror remembering events after the commencement of testimony. One of the disputed facts at trial was whether the county clerk posted notice on a public bulletin board of the subject foreclosure sale. The landowner challenged the sale, in part, on the ground that the clerk failed to post notice. The clerk testified to the contrary. One juror, when asked during voir dire if she knew anything about the case, responded negatively. After the close of testimony, the juror informed the court and the attorneys that she had been present during the foreclosure sale and saw the posted notice. The juror explained that testimony during trial refreshed her memory. The landowner moved to remove the juror and for a mistrial. The trial court denied both requests. The Court of Appeals reversed based on the Texas statute precluding a witness from serving as a juror. The court emphasized that the juror possessed personal knowledge of a disputed fact. Although the Texas court decided *Wyle* on statutory grounds, the statute reflects the constitutional requirement of impartial jurors.

No. 35081-9-III

PENNELL, A.C.J. (dissenting) — I agree with the majority that reversal under a theory of structural error should apply when an empaneled juror is found to have harbored actual bias. *State v. Irby*, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015). Where I part company with the majority is with its conclusion that there was actual bias. Based on the current record, I am not satisfied that juror W's[1] status as some sort of percipient witness compels a finding of actual bias. Because additional information is necessary to determine whether juror W's extra-judicial observations impacted his ability to serve as an impartial juror, I would deny Tishawn Winborne's request for relief from conviction at this time. Instead, I would remand under RAP 9.11 for an evidentiary hearing on the question of bias.

*Reversal is inappropriate, as the record does not establish actual bias*

As recognized by the majority, juror W never explained what it was that made him believe he was a witness to portions of Mr. Winborne's offense conduct on August 5, 2016. The juror may have viewed Mr. Winborne loading boxes at the Motel 6. The juror may have observed Mr. Winborne speeding and driving through stop signs. Or the juror may have merely heard some sirens.

---

[1] As in the majority opinion, I will also refer to this individual as "juror W."

Juror W also failed to disclose what impact, if any, his observations had on his opinion of Mr. Winborne's guilt. It is possible juror W was frightened by what he witnessed and desired retribution. Or it could be juror W thought very little of what he saw, given that our lives are filled with exposure to police sirens and pursuits. The latter scenario would seem quite plausible, given that juror W did not remember seeing anything on August 5 until late in the trial and that two of juror W's four verdicts were for acquittal.

Contrary to the majority's analysis, *State v. Stentz*, 30 Wash. 134, 70 P. 241, (1902), *abrogated on other grounds by State v. Fire*, 145 Wn.2d 152, 34 P.3d 1218 (2001), does not hold that all percipient witnesses are incapable of serving as unbiased jurors. Unlike Mr. Winborne's case, the record in *Stentz* was well developed. It showed the challenged juror had witnessed controverted facts that laid at the heart of the State's case. *Stentz*, 30 Wash. at 140. *Stentz* held that no juror who had been privy to such critical information could be capable of serving as a fair juror. *Id.* at 143. *Stentz* did not hold that any juror falling within the broad category of a percipient witness must automatically be classified as biased.

Not only does *Stentz* fail to disqualify all percipient witnesses as potential jurors, the decision suffers from questionable continued validity. The world has changed in dramatic ways since *Stentz* was decided in 1902. "In these days of swift, widespread and diverse methods of communication" members of the public are often exposed to extra-

2

judicial information about court cases. *Irvin v. Dowd*, 366 U.S. 717, 722-23, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961). In fact, the ubiquity of video recordings and media exposure often enables the public to view criminal episodes as they transpire or shortly thereafter. Yet such exposure does not automatically render someone incapable of serving as a juror. *Id.*; *see also In re Tsarnaev*, 780 F.3d 14, 21-22 (1st Cir. 2015) (Boston marathon bomber not entitled to change of venue despite extensive pretrial publicity). Instead, additional indicators of bias have always been required. *Irvin*, 366 U.S. at 722-23.

Because the record here fails to show whether juror W was in fact biased by exposure to extra-judicial information, Mr. Winborne should not be entitled to reversal of his convictions under a theory of structural error. It must be emphasized that in the structural error context, only prejudice is presumed. The error itself is not. The structural error analysis follows the usual rule of assigning the defendant the burden to prove the existence of error. *See, e.g.*, *State v. Koss*, 181 Wn.2d 493, 503, 334 P.3d 1042 (2014) (defendant's responsibility to show a courtroom closure occurred). It is only once a defendant establishes error that structural error's strong remedy kicks in and entitles the defendant to reversal. Here, because Mr. Winborne has not shown his convictions were infected by a qualifying structural error (i.e. juror bias), the strong remedy of reversal is unwarranted.

*Because actual bias has not been shown, Mr. Winborne's only current remedy is an evidentiary hearing*

The fact that Mr. Winborne has not established structural error does not end the analysis of his case. The questions surrounding juror W's potential bias obligated the trial court to hold an evidentiary hearing. *State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005). This obligation is rooted not only in statute, RCW 2.36.110, and court rule, CrR 6.5, but also due process, *Smith v. Phillips*, 455 U.S. 209, 217-18, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

The trial court's failure to conduct an evidentiary hearing, frequently referred to as a *Remmer*[2] hearing, violated Mr. Winborne's constitutional rights. However, this error is not so fundamental that it qualifies as structural. Instead, the regular rule of constitutional error applies and the burden falls on the State to show the error was harmless beyond a reasonable doubt. *See State v. Coristine*, 177 Wn.2d 370, 379-81, 300 P.3d 400 (2013).

Contrary to the State's contentions, analyzing whether Mr. Winborne was prejudiced by the trial court's failure to conduct a *Remmer* hearing does not turn on the strength of the State's trial evidence. The potential prejudice caused by a *Remmer* violation is not a guilty verdict based on improper evidence or argument; it is a verdict corrupted by juror bias. *See, e.g., United States v. Olano*, 507 U.S. 725, 739-40, 113 S.

---

[2] *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954).

Ct. 1770, 123 L. Ed. 2d 508 (1993) (prejudice inquiry looks to potential impact on juror deliberations, not the strength of the government's case); *Remmer*, 347 U.S. at 229-30 (same). Should bias be established, reversal of a conviction is required regardless of the strength of the State's case. *Irby*, 187 Wn. App. at 193. Given this legal context, overcoming a *Remmer* violation requires the State to establish that Mr. Winborne's jury was not, in fact, biased. For reasons that have already been stated, this burden cannot be met on the current record.

Although the State cannot meet its burden of establishing lack of prejudice, the remedy for a *Remmer* hearing violation is not a new trial. It is instead "a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. at 215. Accordingly, rather than reversing Mr. Winborne's convictions and ordering retrial, this court should remand Mr. Winborne's case for an evidentiary hearing. *See United States v. Herndon*, 156 F.3d 629, 637-38 (6th Cir. 1998) (remanding for evidentiary hearing in analogous circumstances); *United States v. Sylvester*, 143 F.3d 923, 935 (5th Cir. 1998) (same). Our court rules permit this type of limited remand under RAP 9.11. If, upon remand, it is discovered that no meaningful hearing is possible (because, for example, juror W is not amenable to questioning) or juror W is found to have harbored actual bias, then the final disposition of Mr. Winborne's case should be reversal without prejudice. But if the hearing results in a finding that juror W did not suffer from actual bias, Mr.

5

No. 35081-9-III
*State v. Winborne* (Dissent)

Winborne's convictions should be upheld. *Herndon*, 156 F.3d at 637-38; *Sylvester*,
143 F.3d at 935.

Because the record does not support reversing Mr. Winborne's convictions at this
stage of the proceedings, I dissent.

_____
Pennell, A.C.J.

6